Norman WARREN

v.

H.T. WINTERS COMPANY et al.

Supreme Judicial Court of Maine.

Argued Sept. 14, 1987.
Decided Feb. 4, 1988.

Maurice A. Libner (orally), McTeague, Higbee, Libner, Reitman, MacAdam & Case, Topsham, for plaintiff.

Frederick H. Greene, III (orally), Robinson, Kriger & McCallum, John King, Jr., Norman, Hanson & Detroy, Portland, for defendant.

Before McKUSICK, C.J., and NICHOLS, WATHEN, GLASSMAN, SCOLNIK and CLIFFORD, JJ.

CLIFFORD, Justice.

Liberty Mutual Insurance Company, the workers' compensation insurer of H.T. Winters Company, the employer of Norman Warren, appeals a decision of the Appellate Division of the Maine Workers' Compensation Commission. Warren suffered two successive work-related incapacitating injuries, both of which contributed equally to his second injury. At the time of the second injury, for reasons not attributable to the first injury, Warren's average weekly wage was lower than the average weekly wage at the time of the first injury. The Appellate Division held that Warren was entitled to have his benefits based on the higher average weekly wage at the time of the first injury. We agree with Liberty Mutual, the insurer at the time of the second injury, but not the first, that this method of calculating benefits was error and vacate the judgment.

FACTUAL HISTORY

Warren, an employee of Winters, sustained two compensable work injuries to his back. The first injury occurred on October 27, 1981, when Warren slipped and twisted his lower back. Warren received compensation for his total incapacity by approved agreement, which established his "average weekly wage" as being $225.10 at

that time.[1] Winters was then insured by Peerless Insurance Company.

Warren resumed full-time employment with the same company on or about February 11, 1983. Warren's employment continued until May 18, 1983, when he stopped working because of excessive back pain. The Workers' Compensation Commission later found that the employee's average weekly wage at the time of this second injury was $196.21.[2]

On July 20, 1983, Warren filed with the Workers' Compensation Commission a "petition to restore benefits" based upon his injury of October 27, 1981, naming Peerless as the respondent. On December 22, 1983, Warren filed a "petition for award of compensation" with the Commission, alleging May 31, 1983, as the date of injury and naming Liberty Mutual, the insurer at the time of the second injury, as the respondent.

The Commission granted both of Warren's petitions. The hearing commissioner found that the 1981 injury and the 1983 injury contributed equally to the employee's subsequent incapacity,[3] and further found that the diminution in Warren's earnings between the time of the first and second injuries was in no way attributable to the earlier injury.[4] The Commission thus concluded that the employee's benefits should be calculated using the lower average weekly wage earned at the time of the second injury.[5]

Applying the $196.21 average weekly wage figure, the Commission awarded Warren compensation for total incapacity for the period from May 18, 1983, through April 16, 1984, and for 50% partial incapacity thereafter. The Commission's order apportioned liability for the benefits between Peerless and Liberty Mutual, consistent with its finding that the two injuries contributed equally to the ultimate incapacity. For the period of total incapacity, Warren's weekly benefits amounted to two thirds of the 1983 average weekly wage of $196.21, or $130.81.[6] For the subsequent period of 50% partial incapacity, Warren received one half of this amount.

Norman Warren appealed this decision to the Appellate Division of the Workers' Compensation Commission, which reversed

1. The Workers' Compensation Act provides that an employee entitled to total compensation receives two thirds of his average weekly wage, while an employee entitled to 50% partial compensation receives one half that amount. 39 M.R.S.A. §§ 54, 55 (Pamph. 1987).

2. The employee contests the Commission's finding as to the average weekly wage at the time of the second injury, and contends that the Appellate Division failed to address his claim of error. The Appellate Division found no error on that point, and a review of the record reflects that the finding was based on a stipulation entered into by the parties.

3. Although medical testimony presented at the hearing established that the 1983 injury exacerbated the 1981 injury, no physicians were able to testify as to the degree of contribution between the two injuries. Liability for the compensation was thus apportioned between the 1981 insurer and the 1983 insurer.

4. The Commission specifically found that there was "no evidence of record to indicate that when the employee began working again for the employer on February 11, 1983, that he earned less because of the condition of his back. To the contrary, the employee testified that when he began work again that he did not inform the employer that there were any types of work that he was unable to do."

5. In determining the average weekly wage upon which Warren's benefits should be based, the hearing commissioner concluded that:

Since the employee's periods of incapacity under the present decree arose after a period of further employment with a new average weekly wage, and since the Commission has found that the employee's average weekly wage in May of 1983 was not reduced as the result of any incapacity related to his back injury, the Commission concludes that the proper average weekly wage to use for purposes of calculating the benefits is the stipulated [1983] average weekly wage of $196.21.

6. Although Warren's weekly benefits were based on the 1983 average weekly wage of $196.21, the Commission calculated Peerless' liability based on the higher 1981 average weekly wage when Peerless was providing coverage. Accordingly, Peerless was ordered to pay 50% of two thirds of $225.10, or $75.03. Liberty Mutual, the 1983 insurer, was ordered to pay the remainder, $55.78. For the subsequent period of 50% partial incapacity, each insurer was ordered to pay one half of its respective amount. Peerless did not appeal from that apportionment computation.

the Commission by holding that the higher average weekly wage Warren earned at the date of his first injury should govern his level of compensation. Accordingly, the Appellate Division ordered Peerless and Liberty Mutual each to pay half of the total compensation due based on the 1981 average weekly wage of $225.10.

Liberty Mutual, the 1983 insurer, petitioned for and was granted discretionary appellate review pursuant to 39 M.R.S.A. § 103–C (Pamph. 1987).

## LEGAL DISCUSSION

If an employee suffers a totally incapacitating injury in the workplace, that employee is entitled to a weekly compensation equal to two thirds of his or her average weekly wages. 39 M.R.S.A. § 54 (Pamph. 1987). Section 2(2)(A) defines average weekly wages as

the amount which [the employee] was receiving at the time of the injury for the hours and days constituting a regular full working week in the employment or occupation in which he was engaged when injured....

Section 2(2)(F) further provides:

The fact that an employee has suffered a previous injury or received compensation therefor shall not preclude compensation for a later injury or for death; but in determining the compensation for such later injury or death, his "average weekly wages" shall be such sum as will reasonably represent his weekly earning capacity at the time of such later injury in the employment in which he was working at such time, and shall be arrived at according to and subject to the limitations of this section.

The statutory language is designed "to provide a method of arriving at an estimate of the employee's future earning capacity as fairly as possible." *Fowler v. First Nat'l Stores, Inc.*, 416 A.2d 1258, 1260 (Me.1980), quoting *Landry v. Bates Fabrics, Inc.*, 389 A.2d 311, 313 (Me.1978). 2 A. Larson, *The Law of Workmen's Compensation* § 60.00 at 10–590 (1987).

In its determination that the higher average weekly wage at the time of the first injury should be used to compute Warren's compensation, the Appellate Division relied on our decision in *Johnson v. S.D. Warren, Div. of Scott Paper*, 432 A.2d 431 (Me. 1981). *Johnson* was similar to this case in all but one respect. As in this case, the employee Johnson was disabled as the result of two successive compensable injuries. He filed two petitions, one for further compensation against his employer S.D. Warren and the insurer at the time of the first injury, the second a petition for award against S.D. Warren, self-insured at the time of the second injury. The petitions were consolidated before the Commission. Like the instant case, the extent that each of the two injuries contributed to the employee's incapacity was impossible to determine and apportioned equally to each injury. However, unlike this case, the average weekly wage at the time of the second injury was higher than that at the time of the first injury. We held that Johnson's benefits were to be calculated based on the average weekly wage earned by him at the time of the second injury. *Johnson*, 432 A.2d at 434.

The Appellate Division read *Johnson* to require that the successively injured employee be compensated on the basis of the higher of the two average weekly wages, regardless of whether the higher average weekly wage was first or second in time, and determined that the employee Warren should be compensated on the basis of the higher average weekly wage at the time of his first injury.

In *Johnson*, however, the average weekly wage at the time of the second injury was required to be used as the basis of computing Johnson's compensation, not because it was higher, but because it represented his average earnings at the time of his second injury, and section 2(2)(F) required that it be used. *Johnson*, 432 A.2d at 434.

■ We agree with Warren that an employee's rights, including rights to compensation, vest on the date of an injury, and cannot be diminished by subsequently enacted legislation. *Terry v. St. Regis Paper*

*Co.,* 459 A.2d 1106, 1108 (Me.1983); *Reggep v. Lunder Shoe Products,* 241 A.2d 802, 804 (Me.1968); *Lemelin's Case,* 123 Me. 478, 480, 124 A. 204 (1924). However, the rights of an employee who suffers a second successive equally contributing injury cannot be determined until the time of the second injury, since it is not until that time that both injuries combine to cause the incapacity. *Mund v. Farmers' Coop., Inc.,* 139 Conn. 338, 94 A.2d 19, 22 (1952).

▉ Moreover, the use of the second injury average weekly wage is required by section 2(2)(F), legislation in effect at the time of Warren's first injury. Basing compensation on Warren's average weekly wage at the time of the second injury does not diminish his vested rights.

In the experience of our economy, an average weekly wage later in time normally will be higher than one based on an earlier time period. At all times, unless the later average weekly wage is affected by a prior injury, it will more accurately reflect the actual loss of the employee's future earning capacity, which the compensation based on an average weekly wage is designed to accomplish. *Fowler,* 416 A.2d at 1260. 2 A. Larson, *The Law of Workmen's Compensation* § 57.15 at 10–84. Always to compute the benefits to the employee in a successive injury case based on the higher average weekly wage would be to stray from the purposes of the Act and provide a windfall to the employee. If, for example, the employee, subsequently and for reasons unrelated to the first injury, changed to a lower paying occupation where he suffered a second equally contributing injury, or if the second injury occurred during a period of monetary deflation, where all wages were substantially lower and compensation insurance premiums paid by the second injury employer reflected that deflation, the second injury employer-insurer's obligation would be unfairly increased by requiring that compensation be based on the average weekly wage of the earlier, higher paying occupation. In *Johnson,* we held that the obligations of the first injury insurer are fixed at the time of the first injury and cannot be based on an average weekly wage higher than that being earned at that time. *Johnson,* 432 A.2d at 436. To require that the second injury insurer compensate on the basis of a previous average weekly wage higher than that at the time, of the second injury would impermissibly increase its obligation.

We distinguish two other, more common kinds of successive injury cases. First, if Warren's second injury had not been work-related, he would be entitled to benefits based on the average weekly wage at the time of the first injury. *See Gullifer v. Granite Paving Co.,* 383 A.2d 47, 49 (Me. 1978); *cf. Wadleigh v. Higgins,* 358 A.2d 531, 532–33 (Me.1976).

▉ Also, had Warren's lower wages at the time of his second injury been attributable in part to the first injury, then the average weekly wage at the time of the second injury could not be used to compute his benefits. In such a case, the second injury average weekly wage would not provide a fair and accurate basis for determining the loss of his future earning capacity due to the work-related injuries. However, where, as here, the second injury is work-related and at least equally contributing to the incapacity, and the average weekly wage at the time of the second injury is in no way affected by the first injury, its use is required by the provisions of section 2(2)(F) and comports with the purpose of the Act in most accurately predicting the future earning of the employee lost due to the work-related injuries. *Johnson,* 432 A.2d at 434; *Fowler,* 416 A.2d at 1260; 2 A. Larson, *The Law of Workmen's Compensation* § 57.15 at 10–84.

▉ We finally note that the result in this case is not changed by the fact that the employee had petitions before the Commission against both the first (petition to restore benefits) and second (petition for award of compensation) injury insurers. The average weekly wage to be used to compensate an employee disabled by two equally contributing work-related injuries does not depend on whether there is a change of employers or insurers. *Johnson,* 432 A.2d at 434. We do not read 39

M.R.S.A. § 104–B (Pamph. 1987)[7] to impose on Liberty Mutual, as the second injury insurer, additional liability for benefits arising out of the higher average weekly wage Warren earned in 1981, before Liberty Mutual's coverage began. By allowing the successively injured employee to look to the second injury insurer for all benefits due, while granting to the second injury insurer subrogation rights against previous insurers, section 104–B merely provides a procedure for delivering benefits to the injured employee as speedily as possible, and does not substantively affect the level of benefits to which he is entitled.

The entry is:

The decision of the Appellate Division is vacated.

Remanded to the Appellate Division for entry of a decision affirming the decision of the Commission.

It is further ordered that the employer pay to the employee an allowance for counsel fees in the amount of $550 together with reasonable out-of-pocket expenses for this appeal.

All concurring.

---

7. Section 104–B provides in pertinent part:

**§ 104–B. Multiple injuries; apportionment of liability**

....

2. **Liability to employee.** If an employee has sustained more than one injury while employed by different employers, or if an employee has sustained more than one injury while employed by the same employer and that employer was insured by one insurer when the first injury occurred and insured by another insurer when the subsequent injury or injuries occurred, the insurer providing coverage at the time of the last injury shall initially be responsible to the employee for all benefits payable under this Act.

3. **Subrogation.** Any insurer determined to be liable for benefits under subsection 2 shall be subrogated to the employee's rights under this Act for all benefits the insurer has paid and for which another insurer may be liable. Any such insurer may, in accordance with rules prescribed by the commission, file a petition for an apportionment of liability among the responsible insurers. The commission has jurisdiction over all claims for apportionment under this section. In any proceeding for apportionment, no insurer is bound as to any finding of fact or conclusion of the law made in a prior proceeding in which it was not a party.