1997 ME 206

Donald P. RAY

v.

CARLAND CONSTRUCTION, INC. and Liberty Mutual Insurance Co. and Zachau Construction Co. and Acadia Insurance Co.

Denyse PELLETIER

v.

MAINE MEDICAL CENTER and Sedgwick James of Northern New England.

Supreme Judicial Court of Maine.

Argued March 6, 1997.

Decided Oct. 23, 1997.

Paul F. Macri (orally), John E. Sedgwick, Berman & Simmons, P.A., Lewiston, for Donald Ray.

Douglas S. Kaplan (orally), Kaplan & Grant, Portland, for Denyse Pelletier.

Kevin M. Gillis (orally), Troubh, Heisler & Piampiano, P.A., Portland, for Liberty Mutual Ins. Co.

Margaret Phair Sack, Robinson Kriger & McCallum, Portland, for Acadia Ins. Co.

Elizabeth Knox Peck (orally), Frank W. DeLong, III, Thompson & Bowie, Portland, for Sedgwick James.

Before WATHEN, C.J., and ROBERTS, GLASSMAN,* CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

ROBERTS, Justice.

[¶ 1] Both cases in this consolidated appeal from decisions of the Workers' Compensation Board raise issues concerning the applicable law in successive injury cases. In the first case, Carland Construction, Inc., contends that the Board erred by basing an award of compensation on Donald P. Ray's average weekly wage at the time of the first injury and including an inflation adjustment pursuant to former 39 M.R.S.A. § 55–A (Supp.1987), *repealed and replaced by* P.L. 1987, ch. 559, part B, §§ 29, 30, codified at 39 M.R.S.A. § 55–B (1989). In the second case, Denyse Pelletier contends that the Board erred in applying 39–A M.R.S.A. § 213 (Supp.1996) to determine her incapacity benefits when 50% of her incapacity was attributable to a pre–1993 injury governed by former 39 M.R.S.A. § 55–B (1989), *repealed by* Maine Workers' Compensation Act of 1992, P.L.1991, ch. 885, § A–7 (effective January 1, 1993). We vacate the decision of the Board in *Ray,* and affirm in part[1] the Board's decision in *Pelletier.*

### Ray v. Carland Construction, Inc.

[¶ 2] Donald P. Ray suffered his first injury to his back on November 4, 1987, while employed at Carland Construction. His average weekly wage was $455.59. After two months, Carland discontinued its voluntary payment of benefits. Ray suffered a second back injury on November 8, 1993, while employed by Zachau Construction Co., where his average weekly wage was $447.16. In 1994 and 1995, Ray filed petitions for award and further compensation relating to both injuries. In granting the petitions, the Board found that 60% of Ray's incapacity

was attributable to the 1987 injury and 40% to the 1993 injury, and that his benefits should be calculated according to the average weekly wage at the time of his first injury.[2] The Board also concluded that Ray was entitled to the inflation adjustment that was in effect at the time of the 1987 injury, even though the adjustment had been repealed by the time of the 1993 injury.

[¶ 3] Carland filed a motion for further findings of fact and conclusions of law, contending that Ray's benefits should have been based on the average weekly wage at the time of the second injury unless the second wage was lower as a result of the first injury. *McDonald v. Rumford School Dist.,* 609 A.2d 1160, 1161 (Me.1992). Without expressly determining whether Ray's earnings at the time of the second injury were lower as a result of the first injury, the Board denied the motion stating that, unlike *McDonald* which involved two injuries that contributed equally to the employee's incapacity, the greater portion of the responsibility (60%) was attributable to Ray's first injury and therefore his benefits should be calculated according to his average weekly wage at the time of the first injury. We granted Carland's petition for appellate review pursuant to 39–A M.R.S.A. § 322 (Supp.1996).

■ [¶ 4] Carland raises two issues on appeal: (1) whether the Board properly calculated Ray's benefits according to the average weekly wage at the time of his first injury and (2) whether Ray's entitlement to an inflation adjustment is governed by the law in effect at the time of his first injury in 1987 or the law in effect at the time of his 1993 injury, which does not provide an adjustment for inflation or deflation. We conclude that both issues are controlled by our decision in *McDonald,* 609 A.2d at 1161. In that case McDonald suffered a work-related

---

* Glassman, J., sat at oral argument and participated in the initial conference, but retired before this opinion was adopted.

1. Maine Medical Center and Pelletier have stipulated that the Board erroneously denied Pelletier's petition for an award alleging a 1994 injury.

2. Carland Construction was ordered to pay benefits to Ray and Zachau Construction was ordered

to reimburse Carland for its 40% portion of liability. Ordinarily, the employer liable for the second injury is responsible for benefits and the employer liable for the first injury is required to reimburse the second employer. 39–A M.R.S.A. § 354(2) (Supp.1996). The parties do not challenge the Board's order making Carland primarily responsible for Ray's benefit payments with reimbursement from Zachau.

back injury in 1986 and, after returning to full-time work, suffered a second compensable back injury in 1988. *Id.* at 1160. The law in effect at the time of the of the first injury provided an immediate inflation adjustment for total incapacity benefits. 39 M.R.S.A. § 54–A (Supp.1987), *repealed and replaced by* P.L.1987, ch. 559, part B, §§ 26, 27 (codified at 39 M.R.S.A. § 54–B (1989)). The law at the time of McDonald's second injury, however, delayed the application of the inflation adjustment until three years after the injury. 39 M.R.S.A. § 54–B (1989), *repealed and replaced by* P.L.1991, ch. 885, §§ A–7, A–8 (codified at 39–A M.R.S.A. § 212 (Supp.1996)). Because it was impossible to determine the exact contribution of each injury to McDonald's continuing incapacity, the former Workers' Compensation Commission divided the responsibility equally between the two injuries. *McDonald,* 609 A.2d at 1161. The Commission concluded further that McDonald was entitled to the inflation adjustment and to the average weekly wage in effect on the date of his first injury. *Id.* We vacated the Commission's decision, concluding, in part, that the Commission should have computed McDonald's benefits based on his average weekly wage at the time of his second injury. *Id.* Contrary to the Board's conclusion in this case, the fact that McDonald's injuries were "equally contributing" was not the controlling factor on the issue of the applicable average weekly wage. *Id.* The controlling factor in *McDonald* was that the employee's earnings at the time of the second injury were not reduced as a result of his first injury. *Id.* Recognizing that the purpose of the average weekly wage formula is to provide a fair estimate of the employee's future earning capacity in the absence of an injury, we concluded that if the employee has no incapacity at the time of the second injury, the second average weekly wage will most accurately reflect the employee's pre-injury earning capacity. *Id.; Warren v. H.T. Winters Co.,* 537 A.2d 583, 585 (Me.1988). We therefore agree with Carland Construction that it was error for the Board to calculate Ray's benefits according to the average weekly wage at the time of his 1987 injury without first determining whether his earnings at the

time of his 1993 injury were reduced as a result of the 1987 injury. Moreover, Ray conceded at oral argument that there is no evidence that the 1987 injury caused a loss of earning capacity at the time of the 1993 injury. Accordingly, his benefits should have been calculated according to his 1993 average weekly wage.

■ [¶ 5] *McDonald* is also controlling on the issue of the applicable inflation adjustment. 609 A.2d at 1161. We held that McDonald's benefits must be adjusted according to the inflation provision in effect at the time of his second injury. We stated:

> As an employee who has suffered successive equally contributing injuries, McDonald's rights "cannot be determined until the time of the second injury, since it is not until that time that both injuries combine to cause the incapacity." *Warren,* 537 A.2d at 586. The legislature, in an effort to curtail the costs of workers' compensation, was free to limit the inflation adjustment of the average weekly wage, and to provide that it apply to all injuries occurring after the effective date of the legislative change.

*Id.* As was the case for the average weekly wage, the fact that McDonald's injuries contributed equally to his incapacity had no relevance to our decision on the inflation adjustment. Recognizing that the Legislature sought to reduce costs in the workers' compensation system by requiring a three-year waiting period for the adjustment of total benefits, we concluded that the waiting period was intended to apply to all successive injury cases when the most recent injury occurs after the effective date of the statute. *Id.*

[¶ 6] We see no reason to adopt a different holding with respect to the 1992 Act. As we have stated, a major purpose of the new Act was to reduce costs in the workers' compensation system. *Bowie v. Delta Airlines, Inc.,* 661 A.2d 1128, 1131, n. 2 (Me.1995). Moreover, the Legislature is presumed to be aware of our decision in *McDonald. See Musk v. Nelson,* 647 A.2d 1198, 1202 (Me. 1994). Accordingly, we conclude that the Legislature intended the 1992 Act to apply to awards of benefits in successive injury cases

when the most recent injury occurs after the effective date of the Act.[3] *See Bureau v. Staffing Network, Inc.,* 678 A.2d 583, 588 (Me.1996) (" 'In the absence of clear and explicit statutory language showing that the legislature intended a statute to modify case law, we will not interpret a statute to effect such a modification.' ") (quoting *Caron v. School Admin. Dist. No. 27,* 594 A.2d 560, 563 (Me.1991)); *Tripp v. Philips Elmet Corp.,* 676 A.2d 927, 930–31 (Me.1996). We conclude, therefore, that the Board erred by applying the inflation adjustment in this case.

### Pelletier v. Maine Medical Center

[¶ 7] Denyse Pelletier injured her right shoulder on December 7, 1992, while employed as a special care nurse at Maine Medical Center and concurrently employed at Mercy Hospital. She returned to light-duty employment at Maine Medical Center, earning less than her pre-injury wage. Maine Medical voluntarily paid partial benefits pursuant to 39 M.R.S.A. § 55–B, calculated at two-thirds the difference between her gross earnings before and after the injury.[4] In 1994 Pelletier reinjured her shoulder and Maine Medical Center unilaterally altered Pelletier's benefits pursuant to the current partial incapacity statute, 39–A M.R.S.A. § 213, to reflect the difference between her "after tax" earnings before and after the injury.[5]

[¶ 8] In 1994 and 1995 Pelletier filed petitions for review and for restoration for the 1992 injury; Maine Medical Center filed petitions for review relating to both injuries. The parties agreed that because her earnings were lower at the time of the 1994 injury as a result of her first injury, her average weekly wage should be based on her earnings at the time of the earlier 1992 injury. Relying on our decision in *McDonald,* 609 A.2d at 1161,

the Board concluded that because the 1992 and 1994 injuries contributed equally to her incapacity, Pelletier's entitlement to ongoing partial benefits is governed by the law at the time of her second injury, 39–A M.R.S.A. § 213. We granted Pelletier's petition for appellate review pursuant to 39–A M.R.S.A. § 322.

[¶ 9] By its plain language, section 213 increases partial benefits from two-thirds the difference in pre- and post-injury wages to 80% of that difference. Unlike former section 55–B, section 213 is based on the after-tax wages, not on the gross wages. Section 213 also reduces the number of weeks that partial benefits are available in cases where the total body impairment is less than 15%. Section A–10 of the implementing Act provides, in pertinent part: "So as not to alter benefits for injuries incurred before January 1, 1993, for matters in which the injury occurred prior to that date, all the provisions of this Act apply, except that … Title 39–A, sections 211, 212, *213,* 214, 215, 221, 306, and 325 do not apply." Maine Workers' Compensation Act of 1992, P.L. 1991, ch. 885, § A–10 (effective January 1, 1993) (emphasis added). We have held that because section 213 is expressly listed as prospective in application, it does not apply to pre-1993 injuries. *Dumond v. Aroostook Van Lines,* 670 A.2d 939, 941 n. 1 (Me.1996); *Marchand v. Eastern Welding Co.,* 641 A.2d 190, 191, n. 1 (Me.1994). Accordingly, section 213 does not apply to Pelletier's 1992 injury. Pelletier contends that it was error for the Board to apply section 213 to compute her ongoing benefits, when 50% of her incapacity was attributable to the 1992 injury. She argues that all of her benefits are governed by former section 55–B.

---

**3.** The inflation adjustment for partial incapacity benefits was originally repealed in 1987. P.L. 1987, ch. 559, pt. B, § 29 (effective Nov. 20, 1987). Section 213 of the 1992 Act likewise provides no inflation adjustment for partial incapacity benefits.

**4.** Pursuant to former 39 M.R.S.A. § 55–B, partial incapacity benefits are computed as "⅔ the difference, due to the injury, between (the employee's) average *gross* weekly wages, earning(s) or salary before the injury and the weekly wages,

earnings or salary which he is able to earn after the injury." (Emphasis added.)

**5.** 39–A M.R.S.A. § 213(1) computes partial compensation benefits at "80% of the difference between the injured employee's *after-tax* average weekly wage before the personal injury and the *after-tax* weekly wage that the injured employee is able to earn after the injury." (Emphasis added.)

[¶ 10] We agree with the Board that this case is governed by *McDonald*, 609 A.2d 1160, and, notwithstanding the Board's incorrect reliance on the fact that the 1992 and 1994 injuries contributed equally to Pelletier's incapacity, we conclude that the result reached by the Board in this case is correct. We stated in *McDonald* that because McDonald's injuries did not combine to produce his resulting back condition until after the effective date of the repeal of the inflation waiting period, that waiting period applied to the determination of McDonald's entire award of benefits, even though his first injury preceded the effective date of the statute. *Id.* at 1161. In this case, like *McDonald*, Pelletier's injuries did not combine to produce her resulting shoulder incapacity until after the effective date of section 213. A major purpose for the enactment of section 213 was to reduce workers' compensation costs by reducing partial incapacity benefits in cases where the total body impairment is less than 15%. Report of Blue Ribbon Commission to Examine Alternatives to the Workers' Compensation System and to Make Recommendations Concerning Replacement of the Present System, Findings of the Majority of the Blue Ribbon Commission 2 (August 31, 1992). Moreover, the presumption that the Legislature acted with knowledge of our opinion in *McDonald* leads us to conclude once again that the Legislature intended section 213 to. apply to successive injury cases when more than one injury contributes to an incapacitating condition. Accordingly, we affirm the Board's decision to apply section 213 to determine Pelletier's entire award of benefits, notwithstanding the fact that her first injury occurred prior to the effective date of title 39–A.

The entry is:

> In *Ray v. Carland Construction, Inc.*, WCB–95–746: Decision vacated. Remanded to the Board for further proceedings consistent with the decision herein.
>
> In *Pelletier v. Maine Medical Center*, WCB–96–9: Decision vacated with respect to the employee's petition for award for her 1994 injury. Remanded to the Board for an order granting the petition for award for the 1994 injury pursuant to the parties' stipulation.

DANA, Justice, with whom LIPEZ, Justice, joins, dissenting.

[¶ 11] I agree with the Court's holding in *Ray v. Carland Construction, Inc.* that an employee's average weekly wage in a successive injury case may be based on the wage at the time of the most recent injury when the employee's earnings at the time of that later injury are not affected by an earlier work-injury. I also agree that the issue whether the two injuries are equally contributing is irrelevant to the determination of the applicable average weekly wage. I do not agree, however, with the remainder of the Court's decision in *Ray* and in *Pelletier v. Maine Med. Ctr.* holding that the 39–A M.R.S.A. § 213 repeal of the inflation adjustment for partial incapacity benefits, and the 260–week limitation for the receipt of partial benefits, may be applied to that portion of an employee's benefits that relate to a pre–1993 injury, if that injury combines with a subsequent injury after 1993.

[¶ 12] I cannot agree with the Court's conclusion that the general legislative goal of cost-reduction justifies altering benefits for injuries that pre-date the effective date of the Act, in the face of an express legislative purpose not to alter those benefits. *Maine Workers' Compensation Act of 1992*, P.L. 1991, ch. 885, § A–10 (effective January 1, 1993). Section A–10 provides: *"So as not to alter benefits for injuries incurred before January 1, 1993*, for matters in which the injury occurred prior to that date, all the provisions of this Act apply, except that ... Title 39–A, sections 211 [maximum benefit levels], 212 [total incapacity benefits], 213 [partial incapacity benefits], 214 [determination of partial incapacity benefits], 215 [death benefits], 221 [coordination of benefits], 306 [statute of limitation], and 325 [attorney's fees], do not apply." *Maine Workers' Compensation Act of 1992*, P.L.1991, ch. 885, § A–10 (effective January 1, 1993) (emphasis added).[6] The plain import of this language is

---

**6.** The retroactivity issue is also discussed in the legislative debates. *See* Legis.Rec. H–55–57 (3d Spec.Sess.1991) (discussing a proposed amendment to section A–10).

that these sections were not to be applied to the determination of benefits for pre–1993 injuries. *Dumond v. Aroostook Van Lines,* 670 A.2d 939, 941 n. 1 (Me.1996); *Marchand v. Eastern Welding Co.,* 641 A.2d 190, 191, n. 1 (Me.1994). As we have stated, "a clearer statement of legislative intent . . . is hard to imagine." *Morgan–Leland v. University of Maine,* 632 A.2d 748, 749 (Me.1993).[7]

[¶ 13] Notwithstanding the express legislative intent that section 213 does not apply to pre–1993 injuries, the Court in *Ray* relies on our decision in *McDonald v. Rumford School Dist.,* 609 A.2d 1160, 1161 (Me.1992), to hold that the repeal of the inflation adjustment in section 213 may be applied to Ray's 1987 back injury because he suffered a subsequent back injury in 1993. In *Pelletier v. Maine Med. Ctr.,* the Court relies again on *McDonald* to hold that the 260–week durational limitation of section 213 may be applied to a pre–1993 injury when the employee suffers a subsequent aggravation injury after 1993.

[¶ 14] The statutory provisions at issue in this case, sections A–10 and 213, are distinguishable from the statute at issue in *McDonald.* In that case, McDonald suffered his first work-related injury in 1986 when the law provided an inflation adjustment for total incapacity benefits, 39 M.R.S.A. § 54–A (Supp.1987), *repealed and replaced by* P.L. 1987, ch. 559, part B, §§ 26, 27 (codified at 39 M.R.S.A. § 54–B (1989)), and a second work injury in 1988 after the total incapacity statute had been amended to delay the application of the inflation adjustment until three years after the injury, 39 M.R.S.A. § 54–B (1989), *repealed and replaced by* P.L.1991, ch. 885, §§ A–7, A–8 (codified at 39–A M.R.S.A. § 212 (Supp.1996)). With respect to McDonald's average weekly wage, we held that when an employee's earnings at the time

of an injury are not reduced as a result of a prior injury, the average weekly wage at the time of the latter injury should be used in the calculation of benefits. *Id.* Our conclusion was based on the practical reality that, if an employee's incapacity has resolved and the employee is earning at his or her full potential at the time of the second injury, the latter average weekly wage will most accurately reflect that employee's uninjured earning capacity. *See Nielsen v. Burnham & Morrill, Inc.,* 600 A.2d 1111, 1112 (Me.1991) ("[t]he purpose of calculating an average weekly wage is to arrive at an estimate of the 'employee's future earning capacity as fairly as possible' ") (quoting *Fowler v. First Nat'l Stores, Inc.,* 416 A.2d 1258, 1260 (Me.1980)).

[¶ 15] Our rationale with respect to the applicable average weekly wage does not support our decision in *McDonald* to apply the inflation adjustment provision at the time of the second injury to McDonald's benefits for total incapacity. McDonald's entitlement to an inflation adjustment for the receipt of total incapacity benefits has nothing to do with the employee's average weekly wage or whether the employee's earnings at a given time best reflect his or her uninjured earning capacity. The rationale for our decision in *McDonald* to apply the inflation adjustment at the time of McDonald's second injury was based on the express legislative intent of the three-year waiting period to reduce compensation benefits. We stated that "[t]he Legislature, *in an effort to curtail the costs of workers' compensation,* was free to limit the inflation adjustment of the average weekly wage, and to provide that it apply to all injuries occurring after the effective date of the legislative change." *Id.* at 1161 (emphasis added).

[¶ 16] Unlike the three-year waiting period provision at issue in *McDonald,* we are

---

7. In the major legislative reforms to the Workers' Compensation Act in recent years, the Legislature has expressly stated whether it has intended the legislative changes to affect employees with injuries that predate the effective date of the legislation. When the Legislature enacted large-scale reforms to former title 39 in 1985 and 1989, for example, it expressly provided that the provisions were to be applied only to injuries occurring "on or after the effective date" of the statute. P.L.1985, ch. 372, Emergency Clause;

P.L.1987, ch. 559, part B, § 54. Similar language was appended to the workers' compensation amendments of 1991, P.L.1991, ch. 615, § D–26. When the Legislature has intended a statute to apply retrospectively to injuries predating the effective date, it has specifically expressed that intent in statutory language. *See, e.g.,* P.L.1991, ch. 615, §§ A–20, D–25 (exclusion of fringe benefits from average weekly wage to be applied retroactively).

not dealing simply with a statute intended to reduce compensation benefits, but a statute that expressly states that section 213 should not be applied to pre–1993 injuries, "*[s]o as not to alter benefits* for injuries incurred before January 1, 1993." P.L.1991, ch. 885, § A–10 (emphasis added). Unlike the statute at issue in *McDonald*, therefore, the Legislature has not only expressed an intent that certain provisions of title 39–A should not be applied retroactively to injuries that pre-date the effective date of the Act, but also a reason for that intent—to insure that benefits for pre–1993 injuries are not altered. Although we have recognized that a general goal of the Maine Workers' Compensation Act of 1992 was to reduce costs in the workers' compensation system, that general purpose does not compel the conclusion that section 213 was intended to apply to pre–1993 injuries in the face of express legislative intent to the contrary. Had the Legislature intended to cut costs in the workers' compensation system by applying section 213 to all injuries in a successive injury case, it could have expressly drafted the statutory language to that effect.

[¶ 17] In addition to running counter to the express legislative intent not to alter benefits for pre–1993 injuries, the Court's decision also runs afoul of the goal of encouraging injured employees to return to work.[8] The Court's rationale, if taken to its logical conclusion, could have wide-ranging ramifications to injured employees who return to work in 1993 and thereafter. Employees with pre–1993 injuries who are reinjured after 1993 could not only lose their entitlement to an inflation adjustment and be subject to a shorter time period for the receipt of bene-

fits, but could also, arguably, lose their right to statutory maximum benefit levels, 39–A M.R.S.A. § 211, specific loss benefits for the loss of a body part, 39–A M.R.S.A. § 212(3), their right to a more favorable coordination of workers' compensation benefits with other benefits, 39–A M.R.S.A. § 221, employer-paid attorney fees, 39–A M.R.S.A. § 325, and could conceivably be subject to a shorter statute of limitations, 39–A M.R.S.A. § 306. Moreover, in addition to discouraging employees from returning to work, today's decision could also discourage employees with pre–1993 injuries from reporting injuries after 1993. While the Legislature may have intended to reduce compensation benefits, there is no evidence of a legislative intent to discourage the filing of valid workers' compensation claims.

[¶ 18] Because the Act is clear that section 213 does not apply to injuries that pre-date January 1, 1993, and that the purpose of this rule is to insure that benefits for pre–1993 injuries are not altered, I would hold that Ray is entitled to the inflation adjustment in effect at the time of his 1987 injury for that portion of his incapacity (60%) attributable to that injury. I would also hold that Pelletier is entitled to a determination of benefits according to the law in effect in December 1992 for that portion of her incapacity (50%) attributable to her 1992 injury.

---

8. As we have previously recognized, employees with preexisting injuries are especially susceptible to aggravation injuries. *See Bryant v. Masters Mach. Co.*, 444 A.2d 329, 336–337 (Me.1982). An employee receiving benefits for a pre–1993 back injury, for example, may think twice before going back to work if that employee believes that his or her benefits, established under an earlier law, may be limited simply because the employee has the misfortune to receive a second work injury.