2003 ME 16

**Marjorie N. DUNSON,**

v.

**SOUTH PORTLAND HOUSING AUTHORITY.**

Supreme Judicial Court of Maine.

Argued: Oct. 10, 2002.
Decided: Feb. 7, 2003.

---

James J. MacAdam, Esq. (orally), Portland, ME, for employee.

Robert W. Bowers Jr., Esq. (orally), Stephen Hessert, Esq., Norman, Hanson & DeTroy, LLC, Portland, ME, (for South Portland Housing Authority).

Elizabeth Knox Peck, Esq. (orally), Frank W. DeLong III, Esq.; Thompson & Bowie, LLP, Portland, ME, (for Shaw's Supermarkets).

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

CLIFFORD, J.

[¶ 1] The employer, South Portland Housing Authority, appeals from a decision of a hearing officer of the Workers' Compensation Board, granting the employee Marjorie N. Dunson's petitions for award and awarding total incapacity benefits based on the relative contributions of three work-injuries. The hearing officer concluded that because the 1991 injury at Shaw's Supermarkets contributed to only 25% of her total incapacity, Dunson is not entitled to an inflation adjustment, available only for total incapacity benefits, for the portion of her incapacity related to the 1991 injury. *See* 39 M.R.S.A. § 54–B (1989), *repealed and replaced by* P.L.1991, ch. 885, §§ A–7, A–8 (codified at 39–A M.R.S.A. § 212 (2001)).[1] Although we agree with the Housing Authority that the hearing officer erred in failing to apply an inflation adjustment for that portion of Dunson's incapacity attributable to her 1991 injury, *see* 39–A M.R.S.A. § 201(6) (2001), and we vacate the decision, we disagree with the contention of the Housing Authority that the inflation adjustment must inure to its benefit as the most recent employer. We conclude, instead,

---

1. Pursuant to the law at the time of Dunson's 1991 injury, injured employees are entitled to an inflation adjustment for total, but not partial incapacity benefits. *See* 39 M.R.S.A. §§ 54–B, 55–B (1989), *repealed and replaced by* P.L.1991, ch. 885, §§ A–7, A–8 (codified at 39–A M.R.S.A. §§ 212, 213 (2001 & Supp. 2002)). No inflation adjustments are available for total incapacity for Dunson's other two dates of injury in 1993 and 1998. *See* 39–A M.R.S.A. § 212 (2001).

that, pursuant to section 201(6), the inflation adjustment must be paid to the employee in her weekly benefit payment.[2]

[¶ 2] The employee suffered three work-injuries: (1) a left-knee injury in 1991 while employed by Shaw's (the insurer was Helmsman's Management Services); (2) a gradual right-elbow injury in 1993 while working for Shaw's (the insurer was Sedgwick–James of Northern New England); and (3) a broken leg in 1998 while employed by the Housing Authority. The hearing officer granted the employee's petitions for award for all three injuries and awarded total incapacity benefits, apportioning 50% liability to the 1993 injury and 25% liability to the 1991 and 1998 injuries, respectively.

[¶ 3] Pursuant to the apportionment provision, 39–A M.R.S.A. § 354 (2001),[3] the Housing Authority, as the employer at the time of the most recent injury, is initially responsible for paying all benefits to the employee, but is entitled to reimbursement from Shaw's and its two insurers for their portion of the incapacity. The hearing officer initially concluded that, because employees are entitled to inflation adjustments for total incapacity pursuant to the law at the time of Dunson's 1991 injury, see 39 M.R.S.A. § 54–B, repealed by P.L. 1991, ch. 885, § A–7,[4] the employee would

---

2. We do not address the issue of the amount of the reimbursement that the Housing Authority may receive from Dunson's employer at the time of her 1991 injury pursuant to the apportionment provision, 39–A M.R.S.A. § 354 (2001), because that issue has not been presented or briefed by the parties in this appeal.

3. Section 354 provides:
   1. **Applicability.** When 2 or more occupational injuries occur, during either a single employment or successive employments, that combine to produce a single incapacitating condition and more than one insurer is responsible for that condition, liability is governed by this section.
   2. **Liability to employee.** If an employee has sustained more than one injury while employed by different employers, or if an employee has sustained more than one injury while employed by the same employer and that employer was insured by one insurer when the first injury occurred and insured by another insurer when the subsequent injury or injuries occurred, the insurer providing coverage at the time of the last injury shall initially be responsible to the employee for all benefits payable under this Act.
   3. **Subrogation.** Any insurer determined to be liable for benefits under subsection 2 must be subrogated to the employee's rights under this Act for all benefits the insurer has paid and for which another insurer may be liable. Apportionment decisions made under this subsection may not affect an employee's rights and benefits under this Act. The board has jurisdiction over proceedings to determine the apportionment of liability among responsible insurers.
   4. **Consolidation.** The board may consolidate some or all proceedings arising out of multiple injuries.
   39–A M.R.S.A. § 354.

4. For Dunson's 1991 date of injury, her entitlement to total incapacity benefits is governed by former section 54–B, providing in pertinent part:
   While the incapacity for work resulting from the injury is total, the employer shall pay the injured employee a weekly compensation equal to ⅔ his average gross weekly wages, earnings or salary, but not more than the maximum benefit under section 53–B, nor less than $25 weekly.
   1. **Annual adjustment.** Beginning on the 3rd anniversary of the injury, weekly compensation under this section shall be adjusted annually. The adjustment shall be equal to the lesser of the actual percentage increase or decrease in the state average weekly wages, as computed by the Bureau of Employment Security, for the previous year or 5%.
   The annual adjustment shall be made on the 3rd and each succeeding anniversary date of the injury, except that where the effect of the maximum under section 53–B is to reduce the amount of compensation to which the claimant would otherwise be entitled, the adjustment shall be made annually on July 1st.

be entitled to inflation adjustments for that portion of her incapacity that resulted from the 1991 injury.

[¶ 4] In response to a motion for further findings of fact, however, the hearing officer reconsidered and reversed the decision, ruling that, because the law in 1991 did not permit an inflation adjustment for partially incapacitating injuries, *see* 39 M.R.S.A. § 55–B (1989), *repealed and replaced by* P.L.1991, ch. 885, §§ A–7, A–8 (codified at 39–A M.R.S.A. §§ 213, 214 (2001 & Supp.2002)), "[n]o inflation adjustment is necessary for the 1991 date of injury as the employee's total level of incapacity for that injury is only 25% attributable to the 1991 date of injury, i.e., that date of injury did not result in total incapacity."

[¶ 5] Pursuant to 39–A M.R.S.A. § 322 (2001), we granted the Housing Authority's petition for appellate review of the hearing officer's decision.

## I. ENTITLEMENT TO AN INFLATION ADJUSTMENT

[¶ 6] The first issue is whether the hearing officer erred in failing to apply an inflation adjustment to the benefit related to the 25% of Dunson's incapacity attributable to her 1991 injury. Section 201(6) provides a mechanism for determining the applicable law in cases involving multiple work-injuries:

6. **Prior work-related injuries.** If an employee suffers a work-related injury that aggravates, accelerates or combines with the effects of a work-related injury that occurred prior to January 1, 1993 for which compensation is still payable under the law in effect on the date

of that prior injury, the employee's rights and benefits for the portion of the resulting disability that is attributable to the prior injury must be determined by the law in effect at the time of the prior injury.

39–A M.R.S.A. § 201(6). Section 201(6) requires the hearing officer to apportion liability in a multi-injury case and apply the law at the time of each injury to that portion of the incapacity attributable to that injury. *See Cust v. Univ. of Maine,* 2001 ME 29, ¶ 10, 766 A.2d 566, 568–69.

[¶ 7] Section 201(6) was enacted in response to our decision in *Ray v. Carland Constr., Inc.,* 1997 ME 206, ¶ 4, 703 A.2d 648, 650, in which we concluded that, when two or more injuries contribute to an employee's incapacity and the most recent injury occurred after the effective date of title 39–A, the employee's entitlement to benefits is governed exclusively by title 39–A. *See* P.L.1997, ch. 647, § 1 (effective June 30, 1998); L.D. 1318, Statement of Fact (118th Legis.1997). As we have stated, "[t]he purpose of subsection 201(6) was to preserve the law in effect at the time of the injury for injuries occurring prior to the effective date of title 39–A." *Cust,* 2001 ME 29, ¶ 12, 766 A.2d at 569.

[¶ 8] The most recent employer in a multiple injury case is responsible for the combination of all injuries, and can look to prior employers, or their insurers, for reimbursement for their respective proportion of liability for the employee's incapacity.[5] Under conventional principles, an employee is entitled to total incapacity benefits for the combination of two or more work-injuries, resulting in total

---

39 M.R.S.A. § 54–B (1989), *repealed by* P.L. 1991, ch. 885, § A–7.

**5.** The current apportionment statute, 39–A M.R.S.A. § 354, is substantially similar to for-

mer 39 M.R.S.A. § 104–B (1989), *repealed and replaced by* P.L.1991, ch. 885, §§ A–7, A–8, in this respect.

incapacity, even though each injury considered separately would have caused partial incapacity only. *See Johnson v. S.D. Warren, Div. of Scott Paper Co.*, 432 A.2d 431, 435 (Me.1981); *Kidder v. Coastal Constr. Co.*, 342 A.2d 729, 734 (Me.1975).

■ [¶ 9] Section 201(6) provides that, in multi-injury cases, "the employee's rights and benefits for the portion of the *resulting disability* that is attributable to the prior injury must be determined by the law in effect at the time of the prior injury." 39–A M.R.S.A. § 201(6) (emphasis added). As in traditional apportionment cases, the phrase "resulting disability" requires the hearing officer to consider an employee's *entire disability* that results from *all* of the injuries in a multiple injury case. The hearing officer must then determine the proportion of the resulting

disability related to each injury and apply the applicable law to that portion of the injury. We agree with the Housing Authority that because the "resulting disability" in this case was total incapacity, the hearing officer should have applied the former total incapacity statute, 39 M.R.S.A. § 54–B, *repealed by* P.L.1991, ch. 885, § A–7, and required an inflation adjustment to 25% of Dunson's total incapacity attributable to the 1991 injury.[6]

## II. WHICH PARTY RECEIVES THE BENEFIT OF THE ADJUSTMENT

■ [¶ 10] Having determined that the hearing officer erred in failing to apply an inflation adjustment to the benefit related to the 25% of Dunson's incapacity attributable to her 1991 injury, we turn to the contention of the Housing Authority that

---

**6.** Our decision in *Pratt v. Fraser Paper, Ltd.*, 2001 ME 102, 774 A.2d 351, does not require a different result. In *Pratt*, the employee suffered a work-related knee injury and a subsequent nonwork-related heart attack. *Id.* ¶ 2, 774 A.2d at 353. The hearing officer awarded benefits for total incapacity, but permitted the employer to take an offset for 20% based on the contribution of the causally unrelated subsequent nonwork-injury. *Id.* ¶ 6, 774 A.2d at 353–54. We vacated the hearing officer's decision, concluding that, because the employee's work-related injury contributed to only 80% of his total incapacity, the employee was not entitled to benefits pursuant to the total incapacity statute, but was limited to benefits pursuant to the partial incapacity statute, which were capped at 400 weeks and did not include an inflation adjustment. *Id.* ¶ 15, 774 A.2d at 358.

*Pratt* was not governed, as this case is, by section 201(6), but rather by section 201(5), which provides that "[i]f an employee suffers a nonwork-related injury or disease that is not causally connected to a previously compensable injury, the subsequent nonwork-related injury or disease is not compensable under this Act." 39–A M.R.S.A. § 201(5) (2001). In *Pratt*, we noted a distinction between statutes like section 201(5), which provide that a portion of an injury is noncompensable, and oth-

er statutes, like section 201(6), which provide for an apportionment:

When the Legislature has provided for statutory apportionment, it has stated its intent to create apportionment with express statutory language. For example, section 354, applicable in cases involving multiple work-injuries, expressly provides for an "apportionment" of liability. 39–A M.R.S.A. § 354(3) (2001). Similarly, subsection 201(6) authorizes the Hearing Officer to determine "the *portion* of the resulting disability that is attributable" to each work-related injury and to apply the law at the time of each injury. 39–A M.R.S.A. § 201(6) (2001) (emphasis added).

Subsection 201(5), however, provides that when the employee suffers a subsequent nonwork-related injury that is causally unrelated to the work-related injury, this later injury "is not compensable under this Act." This is not apportionment language. It requires the Hearing Officer to separate out the effects of the subsequent nonwork-injury in calculating the amount of benefits and in determining whether the compensation level for the benefits is governed by the partial incapacity section or the total incapacity section.

*Pratt*, 2001 ME 102, ¶¶ 11–12, 774 A.2d at 355.

it, and not the employee, is entitled to receive the benefit of that inflation adjustment pursuant to section 201(6).

[¶ 11] What applicable average weekly wage to apply in a multiple injury case is an issue separate and distinct from that of apportionment, or of determining the applicable law. *See Ray*, 1997 ME 206, ¶¶ 4–5, 703 A.2d at 649–50. While an employee's benefits in a multiple injury case may be governed by several different statutes pursuant to section 201(6), *see Cust*, 2001 ME 29, ¶ 10, 766 A.2d at 568–69, those benefits must be calculated using one average weekly wage. In the present case, the hearing officer correctly concluded that all of Dunson's benefits are to be calculated based on her 1998 average weekly wage.[7]

[¶ 12] While an insurer liable for an injury accepts the risk that an employee may suffer a subsequent injury in future employment, the insurer does not accept the risk of paying benefits for that injury based on a higher average weekly wage. *See Johnson*, 432 A.2d at 435–36. In *Johnson*, an earlier insurer was responsible to reimburse the most recent employer only for benefits calculated according to the average weekly wage at the time of that prior injury. *Id.* This reimbursement scheme between employers or insurers does not relieve the most recent employer of its obligation to pay benefits to the employee based on the controlling average weekly wage. *Id.* In some cases, therefore, the most recent insurer may pay more than its proportionate share, because the reimbursement it receives from a previous employer may be based on a lower average weekly wage.[8]

[¶ 13] In the present case, the Housing Authority contends that, although it is responsible for 50% of the employee's incapacity, the amount it actually pays to the employee is greater than 50%, because the insurers of the prior employer, Shaw's, are responsible only for benefits based on the employee's average weekly wages at the time of the earlier injuries, which are lower than the employee's 1998 average weekly wage. Accordingly, the Housing Authority contends that section 201(6) should be interpreted so that it, as the most recent employer, receives the benefit of the inflation adjustment, thereby permitting it to pay a level of benefits that more accu-

---

7. The parties do not challenge the average weekly wage on appeal and this is not an issue. Our decisions make clear that the average weekly wage that is to be used in a multiple injury case is the average weekly wage that best reflects the employee's uninjured work-capacity. See generally *McDonald v. Rumford Sch. Dist.*, 609 A.2d 1160, 1161 (Me.1992); *Warren v. H.T. Winters Co.*, 537 A.2d 583, 585–586 (Me.1988). The controlling average weekly wage will not always be, as it is in the present case, the wage at the time of the most recent injury. Indeed, in some cases, an employee's average weekly wage at the time of a subsequent injury may be lower than it would otherwise be as a result of a previous work-related injury. *See, e.g., Warren*, 537 A.2d at 585–586. In those situations, it may be appropriate to use the average weekly wage at the time of the first work-injury when the employee was in an uninjured condition. *Id.*

8. Our decision in *Johnson v. S.D. Warren, Div. Of Scott Paper Co.*, 432 A.2d 431, 436 (Me. 1981), was intended to provide an equitable reimbursement scheme between insurers of employees. We stated that "[i]t was never the purpose of our apportionment doctrine in the ... successive injury context to compound the risk already inherent in the first insurer's obligations by importing into that doctrine the uncertainties of a changing average weekly wage." *Id.* We also stated that the most recent insurer still receives "a substantial financial benefit" as a result of apportionment, because, without apportionment, the most recent insurer would be "liable for 100% of the compensation due." *Id.*

rately reflects its true proportion of liability.[9] We disagree.

[¶ 14] The Housing Authority's interpretation of section 201(6) would increase the amount of reimbursement the most recent employer receives from previous employers, but would prevent the employee from receiving the full benefit of the law in effect at the time of her prior injuries. The Housing Authority's construction would, in effect, leave the employee with the same limited entitlement to benefits she would receive pursuant to our decision in *Ray*, 1997 ME 206, ¶ 4, 703 A.2d at 650, and would allow the most recent employer the benefit of more liberal entitlements that existed in earlier statutes, entitlements intended by the Legislature to benefit employees.

■ [¶ 15] Contrary to the Housing Authority's construction of the statute, the purpose of section 201(6) was not to aid the most recent employer or insurer at the expense of the earlier employer in multiple injury cases, but rather to benefit injured employees to assure that those injured employees receive benefits for injuries based on the law in effect at the time of those injuries. *Cust*, 2001 ME 29, ¶ 11, 766 A.2d at 568–69.

[¶ 16] Pursuant to sections 201(6) and 354, therefore, the Housing Authority is required to pay Dunson total incapacity benefits to be calculated according to the applicable total incapacity statutes for each date of injury and, in turn is entitled to reimbursement from the employers responsible for prior injuries, according to their respective obligations to pay under the law at the time of those injuries. In the present case, because 75% of Dunson's incapacity is attributable to injuries occurring after the effective date of title 39–A, *see* P.L.1991, ch. 885, § A–10, 75% of the total incapacity is governed by the current total incapacity statute, 39–A M.R.S.A. § 212. Dunson's benefits for the remaining 25% of her total incapacity must be calculated pursuant to former 39 M.R.S.A. § 54–B, *repealed by* P.L.1991, ch. 885, § A–7, which provided for an inflation adjustment for an employee receiving total incapacity benefits after a three-year waiting period. Any increase in benefits resulting from the application of the inflation adjustment must be paid to the employee.

The entry is:

The decision of the hearing officer of the Workers' Compensation Board is vacated. Remanded to the Workers' Compensation Board for further proceedings consistent with the opinion herein.

---

9. The Housing Authority does not discuss the situation when an employee's benefits would be determined according to the average weekly wage at the time of a previous injury, or when a previous average weekly wage is higher than the wage at the time of the most recent injury.