James PHELAN

v.

**ST. JOHNSBURY TRUCKING and Royal Ins. Company.**

James PHELAN

v.

**ST. JOHNSBURY TRUCKING and Transport Ins. Company.**

Supreme Judicial Court of Maine.

Argued Jan. 14, 1987.
Decided May 27, 1987.

James E. Case, McTeague, Higbee, Libner, Reitman, MacAdam & Case, Brunswick, for Phelan.

Richard F. VanAntwerp, (orally), Robinson, Kriger & MacCallum, Portland, for Transport Ins. Co.

Theodore H. Kirchner, (orally), Norman, Hanson & Detroy, Portland, for Royal Ins. Co.

Before McKUSICK, C.J., ROBERTS, WATHEN, GLASSMAN, SCOLNIK and CLIFFORD, JJ.

ROBERTS, Justice.

In this apportionment case, Royal Insurance Company (Royal) appeals from a decision of the Workers' Compensation Commission that Transport Insurance Company (Transport) is responsible for only 25% of the compensation payable by Royal to the employee, Phelan. The parties agree that it is not possible to determine the extent to which previous occupational injuries contributed to Phelan's single incapacitating condition. Royal contends that because only two insurance carriers, Royal and Transport, were involved in the apportionment proceeding, compensation responsibility should be divided equally between Royal and Transport. Phelan and Transport argue that the commissioner correctly apportioned liability based on the number of discrete contributing occupational injuries for which each carrier was responsible at various times over the past several years. We agree with Phelan and Transport and affirm the commissioner's decision.

## I.

James Phelan was a driver and dock-worker for St. Johnsbury Trucking Company for about 30 years. On December 22, 1982 he suffered an occupational back injury. This injury was the fourth in a series of occupational back injuries incurred dating back to January 1975. The December 22, 1982 injury resulted in total incapacity and caused him to lose his job. Phelan filed several petitions with the commission for payment of medical expenses, permanent impairment benefits and weekly compensation benefits. Royal was St. Johnsbury's insurer at the time of the 1982 injury. Because it was apparent that Phelan's previous occupational back injuries contributed in some degree to his 1982 incapacity, Royal filed a Petition for Apportionment pursuant to 39 M.R.S.A. § 104–B(3) (Pamph.1986) seeking to apportion liability between itself and Transport.

Phelan had suffered three previous occupational back injuries, occurring in 1980, 1977 and 1975. Royal was the carrier on the risk in 1980, Transport in 1977 and Liberty Mutual in 1975. Royal did not name Liberty Mutual as a party in its Petition for Apportionment.[1] Royal and Transport each had contributed 50% towards benefits relative to the 1980 injury and resulting incapacity by agreement.

A hearing on the Petition for Apportionment was held on October 11, 1983.[2] On November 21, 1983 the commissioner entered a decree requiring Transport and Royal to divide equally the financial responsibility for Phelan's benefits resulting from his 1982 incapacity. Both Transport and Royal moved the commissioner to make written findings of fact and conclusions of law. Pursuant to this request, the commissioner issued another decree dated March 20, 1984. In this decree the commissioner found Transport 25% responsible for Phelan's benefits.

Based on the testimony presented at the hearing, the commissioner found that the three previous occupational injuries to Phelan's back contributed to his current incapacity. The commissioner also determined that it was impossible accurately to assess the degree to which each discrete injury contributed to Phelan's incapacity. The commissioner therefore ruled that liability would be apportioned equally by reference to the number of discrete occupational injuries contributing to Phelan's current incapacity. The commissioner determined that four occupational injuries combined to produce the single incapacity in 1982 and accordingly assigned 25% responsibility to each injury. The commissioner then tied a carrier to each injury for purposes of apportioning liability. The commissioner found that Royal was the carrier for the 1982 and 1980 injuries, Transport the carrier for the 1977 injury, and Liberty Mutual for the 1975 injury. Because Liberty Mutual was not made a party to the apportionment proceedings Royal, as the initially responsible carrier, see section 104–B(2), remained responsible for that share. Thus, Royal was responsible for three injuries (75%) and Transport one injury (25%). The commissioner took judicial notice of the 1975 settlement agreement between Phelan and Liberty Mutual to support its view that four occupational injuries must be considered in evaluating the overall proportionate contributions to Phelan's incapacity.

Royal appealed to the Appellate Division, raising essentially two issues: 1) that the commissioner erred in taking judicial notice of the 1975 occupational injury, and 2) that the commissioner erred in apportioning only 25% of the overall liability to Transport, instead of 50%. The Appellate Division affirmed the commissioner's decision in all respects, particularly noting that equal apportionment with reference to the number of contributing occupational injuries for which a carrier is responsible is the proper method to divide carrier responsibility in a multiple injury, successive carrier case when the extent to which each injury

---

1. Royal attempted to bring in Liberty Mutual as a party by petition dated April 24, 1984. Royal dismissed this petition voluntarily.

2. On September 21, 1983 a commissioner granted Phelan's Petition for Award of Compensation based on the 1982 injury.

contributes to the incapacity cannot be determined.

Royal petitioned for appellate review and review was granted. Royal raises the same issues on appeal that it raised with the Appellate Division.

## II.

Royal contends that the commissioner erred in utilizing discrete occupational injuries rather than number of carriers party to the apportionment proceeding to apportion liability equally. The parties agree that equal apportionment is proper since the degree to which each previous occupational injury contributed to Phelan's final incapacity is, according to the medical evidence, uncertain. *See Kidder v. Coastal Construction Co., Inc.*, 342 A.2d 729, 734 (Me.1975); *Widdecomb v. National Sea Products, Inc.*, 389 A.2d 39 (Me.1978). *Kidder, Widdecombe* and other cases[3] establish that equal apportionment methodology may be utilized in a two injury, successive carrier case when the medical evidence cannot without conjecture establish the extent to which each discrete injury contributes to the resulting incapacity. These cases, however, do not assist us in evaluating how equal apportionment is to be implemented in a case involving multiple injuries and multiple carriers.

■ In reviewing the commissioner's decision to utilize injury rather than carrier as the basis upon which to apportion liability "we must pay considerable deference to the expert judgment that the commissioners have developed through their experience in administering the workers' compensation law, a task exclusively committed to their specialized attention by the legislature." *Lagasse v. Hannaford Bros. Co.*, 497 A.2d 1112, 1118 (Me.1985). Under this deferential standard of review, we cannot say that utilizing the number of discrete contributing occupational injuries as a basis upon which to apportion liability is legally erroneous. Indeed, to utilize the number of party-carriers to an apportionment proceeding as a basis is, in our view,

a less rational way to measure liability because the number of carriers made party to an apportionment proceeding is purely fortuitous. *Cf. Johnson v. S.D. Warren, Div. of Scott Paper Co.*, 432 A.2d 431, 434 (Me.1981) (whether and why employer decides to abandon prior insurance carriers are fortuitous events).

Royal also argues that even if a "by injury" approach is correct in principle, the commissioner erred in finding that four discrete occupational injuries resulted in Phelan's ultimate disability. Royal contends that the commissioner should not have taken judicial notice of the 1975 injury and the settlement agreement between Phelan and Liberty Mutual because 1) the parties were told judicial notice would not be taken of prior events unless brought to the commissioner's attention and 2) neither party to the proceeding argued that the 1975 occupational injury contributed to Phelan's present incapacity.

■ We find no error with the commissioner's taking judicial notice of the 1975 occupational injury. The record does not support Royal's contention that the commissioner specifically told the parties no judicial notice of prior decrees would be taken. Moreover, the record adequately establishes the existence of the 1975 occupational injury and incapacity through the expert testimony of a Dr. Wilson and the testimony of Phelan himself.

We note also that the commissioner's decision to judicially notice the 1975 injury and settlement was, in any event, fully authorized by M.R. Evid. 201. Under M.R. Evid. 201(c) a court, or in this case a commissioner, may take judicial notice whether or not requested. In this case, the commissioner issued an initial decree on November 21, 1983, prior to issuing findings of fact and conclusions of law. The decree, while not stating explicitly "I take judicial notice of the 1975 agreement," nevertheless did indicate that the 1975 injury was being considered in evaluating the contributing factors to Phelan's incapacity. M.R. Evid.

---

**3.** *See, e.g., Swan v. Andrew Crowe & Sons, Inc.*, 434 A.2d 1008 (Me.1981); *Dunkin Donuts of*

*America, Inc. v. Watson,* 366 A.2d 1121 (Me. 1976).

201(e) specifically provides that in the absence of prior notification of the taking of judicial notice, a party may request an opportunity to be heard after notice has been taken. Royal failed to request an opportunity to be heard after the November 21, 1983 decree was rendered on the issue of whether it was proper for the commissioner to take judicial notice of the 1975 occupational injury. If Royal had made such a request, the commissioner could have responded to Royal's arguments in the subsequently issued findings of fact and conclusions of law.

■ Royal also contends that two decrees relative to the 1977 injury, both dated June 21, 1979, establish a break in the causal chain between the 1975 injury and Phelan's final incapacity, thereby augmenting its argument that the 1975 injury should not have been considered in apportioning liability. We disagree. The first of those decrees disposed of Phelan's Petition for Further Compensation on account of the 1975 injury. The commissioner dismissed the Petition as "superfluous" in view of the outcome in the companion decree. In that companion decree, the commissioner granted Phelan's Petition for Award of Compensation on account of the 1977 injury. In neither decree did the commissioner make any express finding that the 1975 injury was causally unrelated to the 1977 incapacity. Moreover, while the commissioner's dismissal of the Petition for Further Award as "superfluous" is admittedly enigmatic, the decree granting Phelan's Petition for Award specifically notes the existence of the 1975 injury and suggests that the 1975 injury contributed in some manner to Phelan's recurrent back problems. In any event, the commissioner in the case now before us relied on prior

discrete occupational injuries occurring in 1975 and 1977, *not* the periods of incapacity represented by the 1975 and 1979 decrees. Thus, even if the 1979 decrees are read as not establishing a causal connection between the 1975 and 1977 injuries, that would not preclude a factual finding by the commissioner in this case that the occupational injury suffered in 1975 contributed in some unknown degree to Phelan's 1982 incapacity.[4]

While we recognize that a "by injury" approach is not the only way the commissioner could have rationally resolved the issues, we conclude that in the context of the record before us the approach chosen was legally sound.

The entry is:

Judgment affirmed.

It is further ordered that the employer pay to the employee an allowance of $550.00 for his counsel fees, plus his reasonable out-of-pocket expenses for this appeal.

All concurring.

---

**4.** This line of reasoning applies equally to the 1981 stipulation entered into by Transport and Royal relative to the 1980 injury that resulted in each carrier contributing 50% towards Phelan's benefits for the period of incapacity resulting from that injury. Royal argues that because the 1981 decree divided the carriers' responsibility equally, the commissioner in the case now before us should have apportioned only 50% liability for the 1980 injury to Royal, thereby resulting in a greater percentage responsibility to Transport. As noted in the text, however, the commissioner properly utilized discrete occupational *injuries* rather than periods of incapacity to determine the apportionment scheme. The 1981 stipulation and resulting decree merely recognize shared liability for a period of incapacity; they do not preclude the factual determination made in this case that Transport was the carrier on the risk when the 1977 injury occurred and Royal was the carrier on the risk when the 1980 injury occurred.