2008 ME 43

John LEGASSIE

v.

SECURITAS, INC., et al.

Supreme Judicial Court of Maine.

Argued: June 18, 2007 & Nov. 6, 2007.

Decided: March 4, 2008.

Robert W. Bower, Jr., Esq. (orally), C. Lindsey Morrill, Esq., Norman, Hanson & DeTroy, L.L.C., Portland, ME, for Securitas, Inc.

David J. Leen, Esq., Leen & Emery, P.A., Bangor, ME, James J. MacAdam, Esq. (orally), MacAdam Law Offices, P.A., Portland, ME, for John Legassie.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, LEVY, SILVER, MEAD, and GORMAN, JJ.*

SAUFLEY, C.J.

[¶ 1] There are two matters before us which have been consolidated in this opinion. First, John Legassie appeals from a decision of a Workers' Compensation Board hearing officer (*Sprague, HO*) denying his petitions to amend average weekly wage and for restoration related to injuries sustained in 1995 and 2003. Second, Securitas, Inc., appeals from a second hearing officer decision (*Sprague, HO*) granting Legassie's petition to determine extent of permanent impairment and assigning a 14% permanent impairment rating. We affirm the first decision in part and dismiss the second appeal as moot.

[¶ 2] In February of 1998, Legassie accepted a lump-sum award in full settlement of the 1995 claim. In a 2005 decree, the hearing officer awarded Legassie total incapacity benefits based on his 2003 average weekly wage, and reduced the award by the percentage of incapacity attributable to the settled claim. Thereafter, Legassie filed a petition for restoration of benefits and to amend average weekly wage, which the hearing officer denied. Legassie appeals, contending that it was error (1) to reduce the benefit by the amount attributable to the previously settled claim; and (2) to base the award on the 2003 average weekly wage.

[¶ 3] Legassie also filed a petition to determine extent of permanent impairment. After proceedings in 2006, the hearing officer determined that Legassie suffers 14% permanent impairment as a result of the 2003 injury. Securitas appeals from that decision, contending that the hearing officer erred by basing the impairment rating on a medical opinion formulated using a model different from that prescribed in the American Medical Association, Guides to the Evaluation of Permanent Impairment (4th ed. 1993) (AMA Guides).

[¶ 4] We consolidate the appeals for the purpose of issuing a single opinion. With respect to Legassie's appeal, we affirm the hearing officer's decision insofar as it reduces the benefit by the percentage attributable to the settled claim, but vacate the decision to the extent that it finds that the 1995 average weekly wage cannot apply. With respect to Securitas's appeal, we conclude that it is moot because a favorable decision on the merits will not provide Securitas with any effective relief.

### I. FACTUAL BACKGROUND

[¶ 5] Legassie suffered an injury to his back on December 15, 1995, while working for Hughes Brothers. He lump-sum settled that claim for $30,000. His average weekly wage at the time of the 1995 injury was $390.95.

[¶ 6] After the first injury, Legassie went to work as a security guard for Securitas, Inc. On December 6, 2003, he slipped and fell at work on the ice and reinjured his back. His average weekly wage at the time of the 2003 injury was $263.01. Legassie retained partial earning capacity for a time, but by September of 2004, his symptoms had deteriorated such that he could no longer work. He underwent fusion surgery and continues to suffer total incapacity.

---

* Justice Susan Calkins sat at the June 18, 2007, oral argument and participated in the initial conference of WCB–06–488 but retired before this opinion was certified. Justice Ellen A. Gorman sat at the November 6, 2007, oral argument of WCB–07–47 and participated in the development of the opinion.

[¶ 7] Legassie filed a petition for award and petition for payment of medical and related services. In a 2005 decree, the hearing officer determined that Legassie sustained a compensable injury in December of 2003 that constituted a "significant exacerbation" of his preexisting back condition, and awarded total incapacity benefits based on the 2003 average weekly wage. Legassie's doctor testified that both injuries played a significant role in his condition, but he did not assign a numerical apportionment. The hearing officer determined that 50% percent of Legassie's disability is due to the prior injury, and authorized a 50% reduction in the benefits, pursuant to *Cust v. University of Maine*, 2001 ME 29, 766 A.2d 566.

[¶ 8] Both parties filed motions for additional findings of fact and conclusions of law. In response, the hearing officer issued an amended decree dated July 25, 2005, addressing the issue of whether it was appropriate to base the compensation rate on Legassie's 2003 average weekly wage. He concluded that it was appropriate, because documentation of the 1995 average weekly wage had not been entered into evidence. However, he further stated: "This decision should in no way be interpreted as the final word on this matter. The undersigned invites the employee to file a Petition to Adjust Average Weekly wage and submit evidence on the average weekly wage for the earlier date of injury." Legassie filed a petition for appellate review, which we denied by order dated October 26, 2005.[1]

[¶ 9] On July 27, 2005, Legassie filed a petition to amend the average weekly wage and a petition for restoration of benefits. The hearing officer denied both petitions, concluding that (1) Legassie had received all benefits to which he was entitled for the 1995 injury, and (2) the 1995 average weekly wage could not, as a matter of law, form the basis for the compensation rate because the 1995 claim had been extinguished by the settlement. Legassie filed a petition for additional findings of fact and conclusions of law, which the hearing officer denied. He then filed a petition for appellate review, which we granted pursuant to 39–A M.R.S. § 322 (2007) and MR.App. P. 23.[2]

[¶ 10] In January of 2006, Legassie filed a petition to determine the extent of permanent impairment. Three doctors evaluated Legassie's impairment level. Using the "diagnostic related estimates" or "injury" model, which is the method prescribed in the AMA GUIDES (4th ed.), Dr. Kolkin assigned 5% permanent impairment; using the "range of motion" model, Drs. Brigham and Pier assigned 14% permanent impairment. Drs. Brigham and Pier opined that the range of motion model more accurately measures impairment after a patient has undergone fusion surgery. The hearing officer adopted the opinions of Drs. Brigham and Pier and determined that Legassie suffers 14% permanent impairment.

1. Securitas contends that the appeal should be barred by the doctrine of res judicata because Legassie raised the same issues in the first petition for appellate review that he raises here. The hearing officer's prior decision, however, was left open on the issue of the controlling average weekly wage and we did not deem it appropriate to address the other issue at that time. In these unusual circumstances, we conclude that the appeal is not barred.

2. The United Steelworkers of America; the International Brotherhood of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers and Helpers; AFL–CIO Local 29; the United Association of Plumbers & Pipefitters Local 716; and the International Association of Bridge, Structural, Ornamental, and Reinforcing Iron Workers Local 7, have filed an amicus curiae brief in support of the employee.

[¶ 11] Securitas filed a motion for additional findings of fact and conclusions of law, which the hearing officer denied. We granted Securitas's petition for appellate review.

## II. DISCUSSION

### A. Reduction of Benefit by Percentage Attributable to Settled Claim

[¶ 12] Legassie contends that the reduction in benefits in this case constitutes an improper offset not authorized by 39-A M.R.S. § 221 (2007). He further contends that the lump-sum settled injury should be treated as a pre-existing condition pursuant to 39-A M.R.S. § 201(4) (2007),[3] and that responsibility for the entire incapacity resulting from the two injuries should have been apportioned pursuant to 39-A M.R.S. § 354 (2007).[4] Pursuant to section 354, Legassie argues, Securitas would be liable to pay the entire benefit, and, because Legassie has no rights as against Hughes Brothers, Securitas would not be reimbursed for any portion. *See Arsenault v. J.A. Thurston Co.*, 2004 ME 83, ¶ 9, 853 A.2d 217, 221.

[¶ 13] Securitas, however, is not seeking an offset pursuant to section 221; nor is it seeking an apportionment pursuant to section 354. It is seeking a reduction in benefits commensurate with the amount attributable to an injury for which the employee has received all the benefits to which he is entitled, in order to prevent double recovery.

[¶ 14] The unavailability of an offset pursuant to section 221 or apportionment pursuant to section 354 does not preclude a reduction in benefits to prevent double recovery. There are several situations in which the Act allows for a reduction or adjustment in benefits outside of section 221 and section 354. These include, but are not limited to: (1) a reduction of the portion of incapacity attributable to subsequent nonwork injuries pursuant to 39-A M.R.S. § 201(5) (2007); (2) an apportionment to apply the law in effect at the time of an injury occurring prior to 1993 pursuant to 39-A M.R.S. § 201(6) (2007); and (3) a lien against third-party recoveries in the amount of benefits due pursuant to 39-A M.R.S.

---

**3.** Title 39-A M.R.S. § 201(4) (2007) provides:

> **4. Preexisting condition.** If a work-related injury aggravates, accelerates or combines with a preexisting physical condition, any resulting disability is compensable only if contributed to by the employment in a significant manner.

**4.** Title 39-A M.R.S. § 354 (2007) provides:

> **1. Applicability.** When 2 or more occupational injuries occur, during either a single employment or successive employments, that combine to produce a single incapacitating condition and more than one insurer is responsible for that condition, liability is governed by this section.
> **2. Liability to employee.** If an employee has sustained more than one injury while employed by different employers, or if an employee has sustained more than one injury while employed by the same employer

and that employer was insured by one insurer when the first injury occurred and insured by another insurer when the subsequent injury or injuries occurred, the insurer providing coverage at the time of the last injury shall initially be responsible to the employee for all benefits payable under this Act.
> **3. Subrogation.** Any insurer determined to be liable for benefits under subsection 2 must be subrogated to the employee's rights under this Act for all benefits the insurer has paid and for which another insurer may be liable. Apportionment decisions made under this subsection may not affect an employee's rights and benefits under this Act. The board has jurisdiction over proceedings to determine the apportionment of liability among responsible insurers.
> **4. Consolidation.** The board may consolidate some or all proceedings arising out of multiple injuries.

§ 107 (2007). The Act also allows an employer to take a credit for a duplicate recovery in another state. *LaPointe v. United Eng'rs & Constructors*, 680 A.2d 458, 461 (Me.1996).

[¶ 15] The hearing officer in this case based his decision to authorize a reduction in the benefit on *Cust v. University of Maine*, 2001 ME 29, 766 A.2d 566. In that case, applying 39–A M.R.S. § 201(6) (2007),[5] we held that an insurer in a multiple injury case is entitled to take a proportionate reduction when liability for one of the injuries expires as a result of the statutory durational limit for partial incapacity benefits. *Cust*, 2001 ME 29, ¶ 15, 766 A.2d at 570.

[¶ 16] The hearing officer also relied on *Edwards v. Travelers Ins. Co.*, 2001 ME 148, 783 A.2d 163. In *Edwards*, the employee had settled her claim against the insurer on the most recent injury, after liability had been apportioned equally between two injuries. *Id.* ¶¶ 5–6, 783 A.2d at 164–65. We determined that the nonsettling insurer was liable only for its apportioned amount of the benefit, *id.* ¶ 20, 783 A.2d at 168, in order to prevent double recovery, *id.* ¶ 10, 783 A.2d at 166 (stating "We have long disfavored interpretations of the Workers' Compensation Act which result in duplicate recoveries of benefits for particular injuries."). We reasoned that the unilateral lump-sum settlement agreement could not alter the prior apportionment when the employee had participated in the apportionment proceedings. *Id.* ¶ 19, 783 A.2d at 168; *see also Bourque v. Frank X. Pomerleau, Inc.*, 472 A.2d 933, 936 (Me.1984) (holding lump-sum settlement of second injury does not preclude recovery for prior injury, but recovery for prior injury "remain[s] valid to the extent it *exceeds* the potential claims commuted by the lump sum settlement" thus preventing double recovery).

[¶ 17] Legassie contends that our decision in *Phelan v. St. Johnsbury Trucking*, 526 A.2d 584 (Me.1987), should control. Phelan had suffered four work-related injuries to his back, the most recent of which resulted in total incapacity. *Id.* at 586. The insurer on that injury sought an apportionment. *Id.* The hearing officer determined that each injury was equally responsible for the employee's current incapacity, and apportioned 25% to each. *Id.* The employee had settled with the insurer on the first injury. *Id.* Because the insurer on the first injury had not been made a party to the apportionment proceedings, the commissioner determined that the most recent insurer was responsible for the percentage of incapacity resulting from the first injury, and we affirmed the apportionment. *Id.* at 586–87. However, it does not appear that the insurer argued that it was entitled to a credit for the settlement against the absent insurer, thus we did not consider the issue in our decision. *See id.* at 587–88.

■ [¶ 18] Upon review of these authorities, we conclude that the hearing officer correctly determined that *Cust* governs the outcome in this case. In *Cust*, as in this case, the benefits for the other injury had been fully paid; therefore it was appropriate to order a reduction in benefits allocated to that injury. Pursuant

**5.** Title 39–A M.R.S. § 201(6) (2007) provides:
**Prior work-related injuries.** If an employee suffers a work-related injury that aggravates, accelerates or combines with the effects of a work-related injury that occurred prior to January 1, 1993 for which compensation is still payable under the law in effect on the date of that prior injury, the employee's rights and benefits for the portion of the resulting disability that is attributable to the prior injury must be determined by the law in effect at the time of the prior injury.

to the lump-sum settlement in this case, Legassie received all the payment to which he is entitled for the first injury. Requiring the most recent insurer to pay a benefit that includes compensation for the first, paid-in-full injury would result in the employee receiving compensation over and above what he agreed to receive as full compensation for that injury.

[¶ 19] This result underscores the importance of careful drafting of lump-sum settlement agreements and thorough evaluation of the possible impact of those agreements on future work-related injuries. The Legislature, understanding both the benefits and the serious consequences of entering into a lump-sum settlement, requires board approval of lump-sum settlement agreements, after a hearing in which the following factors are reviewed with the employee:

A. The employee's rights under this Act and the effect a lump-sum settlement would have on those rights, including, if applicable, the effect of the release of an employer's liability for future medical expenses;

B. The purpose for which the settlement is requested;

C. The employee's post-injury earnings and prospects, considering all means of support, including the projected income and financial security resulting from proposed employment, self-employment or any business venture or investment and the prudence of consulting with a financial or other expert to review the likelihood of success of these projects;

D. Any other information, including the age of the employee and of the employee's dependents, that would bear upon whether the settlement is in the best interest of the claimant; and

E. The existence of a child support debt of which notification has been sent pursuant to Title 19–A, section 2360–A.

39–A M.R.S. § 352(3) (2007). Review of these factors must be undertaken on the record, Me. W.C.B. Rule, ch. 12, § 6, and that record be preserved indefinitely, *id.* § 19(3).

[¶ 20] The agreement between Legassie and Hughes Brothers and its insurer, MEMIC, is an example of such careful drafting. The documents reflect that Legassie understood that by accepting the settlement, he would have no further right to make additional claims related to the 1995 injury, and that settlement could affect the amount he would receive in the event of a new work injury or exacerbation of an existing injury.[6] Legassie was represented by counsel, and the settlement was approved by the Board. Legassie cannot now succeed with an argument that he is entitled to additional compensation for the 1995 injury.

[¶ 21] Legassie also takes issue with the method employed by the hearing officer to reduce the total incapacity benefit. He contends that reducing the benefit by the percentage attributed to the prior injury under-compensates the employee and does not accomplish the goal of preventing double recovery. However, neither the Legislature nor the Board has

---

6. The affidavit that Legassie executed in conjunction with signing the lump-sum settlement agreement states:

I ... understand that if any time in the future, I injure myself and make a further workers' compensation claim, or if my condition changes or worsens, or if an additional or different diagnosis of my condition is made, the fact that I have agreed to a lump-sum settlement of this claim may affect the amount of money or benefits which I might receive as a result of any new workers' compensation claim. I accept the risk that this lump-sum settlement may have on any future workers' compensation claim I might make.

prescribed a method by which to account for a prior lump-sum settlement after a subsequent injury, and our precedents do not compel that a reduction be based on anything other than relative percentages of responsibility for the incapacity. *Cf. Cust,* 2001 ME 29, ¶ 15, 766 A.2d at 570; *Edwards,* 2001 ME 148, ¶ 20, 783 A.2d at 168. We therefore defer to the hearing officer's decision to reduce the benefit according to the percentage attributable to the 1995 injury. *See Foley v. Verizon,* 2007 ME 128, ¶ 16, 931 A.2d 1058, 1062.

 [¶ 22] On this issue, Legassie finally contends that an equal division of responsibility for his incapacity was not appropriate in this case because the issue of each injury's contribution to his current incapacity was not fully litigated. To the contrary, the issue was raised in the proceedings before the hearing officer. Legassie's treating physician was asked to ascribe responsibility as between the two injuries, and the physician testified that he could not determine an accurate medical apportionment. "[W]hen it is impossible to fix an exact percentage to determine the relative responsibility of different injuries in a multiple injury case, it is permissible to divide responsibility evenly between the multiple injuries." *Bernier v. Data Gen. Corp.,* 2002 ME 2, ¶ 12, 787 A.2d 144, 148. The hearing officer did not err in dividing responsibility equally between the two employers.

## B. Average Weekly Wage

[¶ 23] Next, we must determine whether it was error for the hearing officer to determine, as a matter of law, that Legassie's workers' compensation benefit must be based on his 2003 average weekly wage because the 1995 average weekly wage was no longer viable due to the settlement. The 2003 average weekly wage was $263.01, and the 1995 average weekly wage was $390.95.

[¶ 24] "Average weekly wage" is defined in the Act as "the amount that the employee was receiving at the time of the injury for the hours and days constituting a regular full working week in the employment or occupation in which the employee was engaged when injured." 39–A M.R.S. § 102(4)(A) (2007). When an employee has suffered more than one injury, the average weekly wage is, in ordinary circumstances, the amount that "will reasonably represent the employee's weekly earning capacity at the time of the later injury in the employment in which the employee was working at that time[.]" 39–A M.R.S. § 102(4)(G).

 [¶ 25] This statutory language "is designed to provide a method of arriving at an estimate of the employee's future earning capacity as fairly as possible." *Warren v. H.T. Winters Co.,* 537 A.2d 583, 585 (Me.1988) (quotation marks omitted) (construing a prior version of the statute containing nearly identical language, 39 M.R.S.A. § 2(2)(F) (1989)). We have recognized that in multiple injury cases, when the employee earns lower wages at the time of a later injury as *a result of a prior injury,* the later average weekly wage does not always fairly represent the employee's future earning capacity. *Id.* at 586. Thus, we have noted an exception to the general rule of section 102(4)(G): if "the second injury average weekly wage would not provide a fair and accurate basis for determining the loss of . . . future earning capacity due to the work-related injuries," the average weekly wage at the time of the second injury is not used to compute benefits. *Warren,* 537 A.2d at 586. Instead, when the average weekly wage at the time of the later injury is lower because of a prior injury, the hearing officer should calculate the benefit

based on "the average weekly wage that best reflects the employee's uninjured work-capacity." *Dunson v. So. Portland Hous. Auth.*, 2003 ME 16, ¶ 11 n. 7, 814 A.2d 972, 978; *see also McDonald v. Rumford Sch. Dist.*, 609 A.2d 1160, 1161 (Me. 1992); *Warren*, 537 A.2d at 586.

[¶ 26] Legassie asserts that he earned less in 2003 than he did in 1995 *as a result of* the 1995 injury, and that the 1995 average weekly wage better represents his uninjured future earning capacity.

[¶ 27] The question of which average weekly wage is controlling is a question of fact. In undertaking that analysis, the hearing officer must decide whether the employee was earning less at the time of the second injury as a result of the first injury, and if so, which average weekly wage provides a fair and accurate basis for determining the loss of his future earning capacity due to the work-related injuries. Here, the hearing officer did not complete that factual analysis. We find no authority for the proposition that the 1995 average weekly wage cannot apply because the 1995 injury was lump-sum settled. The fact that Legassie has been paid all benefits to which he was entitled for the 1995 injury does not alter his entitlement to benefits for the 2003 injury based on an average weekly wage that best reflects his future, uninjured earning capacity.

[¶ 28] Accordingly, we remand for a determination of whether Legassie earned less in 2003 as a result of the 1995 injury, and if so, which average weekly wage best reflects his uninjured future earning capacity.

C. Permanent Impairment Level

[¶ 29] Securitas contends that the hearing officer erred when basing his conclusion that Legassie suffers 14% permanent impairment on a medical opinion formulated using a diagnostic model that is not prescribed in the AMA GUIDES. Preliminarily, however, we must decide whether Securitas's appeal should be dismissed as moot. "An issue is deemed to be 'moot' when there is no 'real and substantial controversy, admitting of specific relief through a judgment of conclusive character.'" *Smith v. Hannaford Bros. Co.*, 2008 ME 8, ¶ 6, 940 A.2d 1079 (quoting *Lewiston Daily Sun v. Sch. Admin. Dist. No. 43*, 1999 ME 143, ¶ 16, 738 A.2d 1239, 1243). "When determining whether a case is moot, we examine whether there remain sufficient practical effects flowing from the resolution of [the] litigation to justify the application of limited judicial resources." *Id.* ¶ 6 (quotation marks omitted).

[¶ 30] The extent of Legassie's permanent impairment is relevant only to whether he would be entitled to receive partial incapacity benefits beyond the maximum number of weeks established by 39-A M.R.S. § 213 (2007). The hearing officer awarded Legassie total incapacity benefits, which are not subject to a durational cap. The reduction in benefits to prevent double recovery does not change the character of that award from total to partial, and the mere possibility that some time in the future the award may be reduced to partial is not enough to warrant judicial intervention at this time. Because a decision in Securitas's favor will not afford it any effective relief, we dismiss the appeal as moot. *See Smith*, 2008 ME 8, ¶ 7, 940 A.2d at 1079.

The entry is:

The decision of the hearing officer of the Workers' Compensation Board in *Legassie v. Securitas, Inc.*, WCB–06–488, is affirmed in part and vacated in part and remanded for proceedings consistent with this opinion.

The appeal in *Legassie v. Securitas, Inc.*, WCB–07–47, is dismissed as moot.