2011 ME 79

**Peter MILLER**

v.

**SPINNAKER COATING et al.**

Supreme Judicial Court of Maine.

Argued: May 11, 2011.
Decided: July 12, 2011.

James J. MacAdam, Esq. (orally), Nathan A. Jury, Esq., David E. Hirtle, Esq., MacAdam Law Offices, P.A., Portland, ME, for Peter Miller.

Alison A. Denham, Esq. (orally), Douglas, Denham, Buccina & Ernst, Portland, ME, for Spinnaker Coating and Fireman's Fund.

Thomas E. Getchell, Esq., Troubh Heisler, Portland, ME, for amicus curiae S.D. Warren Company.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

SILVER, J.

[¶ 1]   At issue in this workers' compensation appeal is whether the last insurer in a multiple-injury case may take a proportionate reduction in the employee's benefit when liability for the first injury expires as a result of the statutory durational limit. Peter Miller suffered four work-related injuries to his lower back while working for S.D. Warren Co. and then Spinnaker Coating. He appeals from a decision of a Workers' Compensation Board hearing officer (*Jerome, HO*) granting S.D. Warren's petition to cease payment on the earliest injury and Spinnaker's petition to reduce the total benefit payment accordingly. We affirm the hearing officer's decision.

## I. BACKGROUND

[¶ 2] Peter Miller injured his lower back in 1992, 1995, and 1996, while working for S.D. Warren, and in 1999, while working for Spinnaker. In a 2002 decree, the hearing officer awarded him 65% partial incapacity benefits apportioned equally among the four dates of injury. Fireman's Fund, Spinnaker's insurer for the most recent date of injury, paid the entire weekly benefit amount and obtained reimbursement from S.D. Warren for its share of the award. *See* 39–A M.R.S. § 354 (2010).

[¶ 3] In October 2009, S.D. Warren filed a petition for review with the Workers' Compensation Board, requesting permission to cease payment for the 1992 injury because it had made all payments to which Miller was entitled for that injury pursuant to the 520–week limit. *See* 39 M.R.S.A. § 55–B (Supp.1992).[1] Spinnaker then filed a petition to reduce or suspend benefits consistent with any reduction awarded to S.D. Warren. Miller filed a separate petition for review for each date of injury, seeking an increase to total incapacity benefits on the basis that his physical and mental condition had deteriorated.

[¶ 4] The hearing officer denied Miller's petitions for review, determining that Miller had not demonstrated a change in medical or economic circumstances, *see Grubb v. S.D. Warren Co.*, 2003 ME 139, ¶¶ 7, 10, 837 A.2d 117, 119–20; granted S.D. Warren's petition to cease payment on the 1992 injury; and granted Spinnaker's petition to reduce the benefit payment accordingly. Miller filed a petition for appellate review, which we granted pursuant to 39–A M.R.S. § 322(3) (2010) and M.R.App. P. 23(c). We limited the appeal to the issue of whether the hearing officer improperly expanded our holding in *Cust v. University of Maine*, 2001 ME 29, ¶ 15, 766 A.2d 566, 570, to allow for a reduction in benefits when the durational limit has expired on the first of multiple injuries.

## II. DISCUSSION

[¶ 5] Miller contends that Spinnaker remains responsible to pay the entire 65% partial benefit pursuant to 39–A M.R.S. § 354,[2] despite the expiration of

---

1. Title 39 M.R.S.A. § 55–B (Supp.1992), applicable to Miller's 1992 injury, provides, in relevant part: "An employee is not eligible to receive compensation under this section after the employee has received 520 weeks of compensation under section 54–B [providing for total incapacity benefits], this section or both sections." Section 55–B has since been repealed and replaced by P.L.1991, ch. 885, §§ A–7, A–8 (effective Jan. 1, 1993) (codified at 39–A M.R.S. § 213 (2010)).

2. Title 39–A M.R.S. § 354 (2010) provides, in relevant part:

   **2. Liability to employee.** If an employee has sustained more than one injury while employed by different employers, or if an employee has sustained more than one injury while employed by the same employer and that employer was insured by one insurer when the first injury occurred and insured by another insurer when the subsequent injury or injuries occurred, the insurer providing coverage at the time of the last injury shall initially be responsible to the employee for all benefits payable under this Act.

   **3. Subrogation.** Any insurer determined to be liable for benefits under subsection 2 must be subrogated to the employee's rights under this Act for all benefits the insurer has paid and for which another insurer may be liable. Apportionment decisions made under this subsection may not affect an employee's rights and benefits under this Act. There may be no reduction of an employee's entitlement to any benefits under this Act payable by an insurer based on a prior work-related injury that was the subject of a lump sum settlement approved by the board prior to the date of the injury for which the insurer is responsible. The board has jurisdiction over proceedings to determine the apportionment of liability among responsible insurers.

the durational limit for the 1992 injury and the unavailability of apportionment against S.D. Warren. For the reasons that follow, we disagree, and affirm the hearing officer's decision.

[¶ 6] In multiple-injury cases, the most recent insurer is "responsible to the employee for all benefits payable under [the Workers' Compensation] Act," and is then subrogated to the employee's rights for any amounts for which other employers or insurers are liable to the employee. 39-A M.R.S. § 354(2), (3); *see also Dunson v. S. Portland Hous. Auth.*, 2003 ME 16, ¶ 8, 814 A.2d 972, 976; *Trottier v. Thomas Messer Builders*, 2007 ME 64, ¶ 18, 921 A.2d 163, 167–68. As the most recent employer/insurer here, Spinnaker/Fireman's Fund has an obligation to pay Miller the entire benefit that he is owed. The issue before us is whether Spinnaker/Fireman's Fund remains responsible to pay the entire 65% partial incapacity benefit, including the amount attributable to the 1992 injury, even though Miller has been paid the statutory maximum number of partial benefit payments for the 1992 injury and Spinnaker can no longer seek reimbursement from S.D. Warren. To answer this question, we look to 39-A M.R.S. § 201(6) (2010) and our decisions construing that provision, including *Cust*.

## A. Title 39-A M.R.S. § 201(6)

[¶ 7] Title 39-A M.R.S. § 201(6) "requires the hearing officer to apportion liability in a multi-injury case and apply the law [in effect] at the time of each injury to that portion of the incapacity attributable to that injury." *Dunson*, 2003 ME 16, ¶ 6, 814 A.2d at 976. Section 201(6) provides:

> **Prior work-related injuries.** If an employee suffers a work-related injury that aggravates, accelerates or combines with the effects of a work-related injury

that occurred prior to January 1, 1993 for which compensation is still payable under the law in effect on the date of that prior injury, the employee's rights and benefits for the portion of the resulting disability that is attributable to the prior injury must be determined by the law in effect at the time of the prior injury.

"The purpose of subsection 201(6)[is] to preserve the law in effect at the time of the injury for injuries occurring prior to the effective date of title 39-A." *Cust*, 2001 ME 29, ¶ 12, 766 A.2d at 569. Accordingly, the hearing officer must "consider an employee's *entire disability* that results from *all* of the injuries in a multiple injury case," and then "determine the proportion of the resulting disability related to each injury and apply the applicable law to that portion of the injury." *Dunson*, 2003 ME 16, ¶ 9, 814 A.2d at 977.

## B. *Cust v. University of Maine*

[¶ 8] In *Cust*, we held that, pursuant to section 201(6), an insurer in a multiple-injury case was entitled to take a proportionate reduction when liability for the most recent injury had expired due to the durational limit. 2001 ME 29, ¶¶ 10, 15, 766 A.2d at 568, 570. The employee in *Cust* suffered work injuries to her right arm in 1984, and to her left arm in 1988. *Id.* ¶ 2, 766 A.2d at 566. She was awarded 60% partial incapacity benefits for the combined effects of both injuries. *Id.*, 766 A.2d at 566–67. Later, the employer filed a petition to suspend benefits for the 1988 injury. *Id.* ¶ 3, 766 A.2d at 567. The hearing officer determined that the employer was entitled to cease paying the percentage of the benefit attributable to the 1988 injury because the employee had received more than 400 weekly payments for that injury pursuant to the law in effect at the time, 39 M.R.S.A. § 55–B (Pamph. 1988) (establishing a 400–week durational

limit).[3] *Cust,* 2001 ME 29, ¶¶ 3–4, 766 A.2d at 567. The hearing officer treated the 1988 injury as a "subsequent nonwork injury for purposes of determining the University's continued liability for the 1984 injury," and ordered the University to continue paying unreduced benefits for the 1984 injury, due to the combined effects of both injuries. *Id.* ¶ 4, 766 A.2d at 567.

[¶ 9] On appeal, we first determined that the hearing officer erred in concluding that the expired 1988 work injury could be treated as a subsequent nonwork injury. *Id.* ¶¶ 5–9, 766 A.2d at 567–68. Then, pursuant to section 201(6), we analyzed the employer's liability according to the law in effect at the time of each injury. *Id.* ¶¶ 10, 15, 766 A.2d at 568, 570. We concluded, pursuant to the 400–week durational limit in section 55–B, that the employer was entitled to suspend benefits for the portion of the employee's incapacity attributable to the 1988 injury. *Id.* ¶ 15, 766 A.2d at 570.

[¶ 10] Miller contends that *Cust* is distinguishable because although *Cust* was a multiple-injury case, it involved a later injury to a different body part rather than an earlier injury to the same body part. Miller essentially argues that the Act treats prior injuries that combine with subsequent injuries differently from later injuries that are unrelated. In support of his argument, Miller cites 39–A M.R.S. § 201(4) (2010), which allows compensation for pre-existing conditions if those conditions combine with or are aggravated or accelerated by a work injury, and 39–A M.R.S. § 201(5) (2010), which provides

that incapacity from subsequent, noncausally-connected nonwork injuries must be subtracted out.[4] Miller also asserts that the concept of continued payment for earlier injuries is reflected in the permanent impairment statute, 39–A M.R.S. § 213(1–A)(A), (B) (2010) (allowing stacking of permanent impairment from a pre-existing condition that is aggravated or accelerated by the work injury with permanent impairment from "the work injury at issue," and for injuries after 2002, for any prior, recognized work injury that combines with "the work injury at issue"); *see also Buckley v. S.D. Warren Co.,* 2010 ME 53, ¶ 15, 997 A.2d 747, 753 (allowing injuries to be stacked for purposes of the permanent impairment threshold because the later injury "resulted from" the earlier injury, and all injuries were part of the "work injury at issue in the determination" (alteration omitted) (quotation marks omitted)).

[¶ 11] Section 201(6), however, requires us to consider the portion of the employee's incapacity that is attributable to each injury, and to apply the law in effect at the time of each injury. *Dunson,* 2003 ME 16, ¶¶ 6, 9, 814 A.2d at 976, 977. The law applicable to the 1992 injury established a 520–week durational limit for partially incapacitating injuries. 39 M.R.S.A. § 55–B (Supp.1992). Miller has received all benefits to which he is entitled for that injury, and any additional payments would result in his receipt of compensation over and above what the law provides. *See, e.g., Edwards v. Travelers Ins. Co.,* 2001 ME

---

3. Title 39 M.R.S.A. § 55–B (Pamph.1988) has been repealed and replaced, and is now codified at 39–A M.R.S. § 213.

4. Title 39–A M.R.S. § 201(4), (5) (2010) provides:

    **4. Preexisting condition.** If a work-related injury aggravates, accelerates or combines with a preexisting physical condition, any resulting disability is compensable only

if contributed to by the employment in a significant manner.

    **5. Subsequent nonwork injuries.** If an employee suffers a nonwork-related injury or disease that is not causally connected to a previous compensable injury, the subsequent nonwork-related injury or disease is not compensable under this Act.

148, ¶ 10, 783 A.2d 163, 166 ("We have long disfavored interpretations of the Workers' Compensation Act which result in duplicate recoveries of benefits for particular injuries.").

### C. *Legassie v. Securitas, Inc.* and Amendments to 39–A M.R.S. § 354

[¶ 12] Miller also argues that the Legislature has overruled a decision in which we expanded the holding of *Cust* to prior injuries, indicating disfavor with such reductions in benefits. In *Legassie v. Securitas, Inc.*, 2008 ME 43, ¶ 18, 944 A.2d 495, 500–01, we extended *Cust's* holding to authorize a reduction in benefits by the percentage of incapacity attributable to a prior injury that had been lump-sum settled. Subsequently, the Legislature amended the apportionment statute to preclude such a reduction for the percentage of benefits attributable to a prior, lump-sum settled injury. P.L.2009, ch. 301 (effective Sept. 12, 2009) (codified at 39–A M.R.S. § 354(3)). The relevant section of the statute now reads, with the language of the 2009 amendment emphasized:

> **3. Subrogation.** Any insurer determined to be liable for benefits under subsection 2 must be subrogated to the employee's rights under this Act for all benefits the insurer has paid and for which another insurer may be liable. Apportionment decisions made under this subsection may not affect an employee's rights and benefits under this Act. *There may be no reduction of an employee's entitlement to any benefits under this Act payable by an insurer based on a prior work-related injury that was the subject of a lump sum settlement approved by the board prior to the date of the injury for which the insurer is responsible.* The board has jurisdiction over proceedings to determine the apportionment of liability among responsible insurers.

39–A M.R.S. § 354(3).

[¶ 13] The hearing officer in this case determined, and we agree, that the 2009 amendment is limited to the prior lump-sum settlement scenario. It does not prohibit a reduction for weekly benefits that have otherwise been fully paid. As we noted in *Legassie:*

> The unavailability of an offset pursuant to [39–A M.R.S. § 221] or apportionment pursuant to section 354 does not preclude a reduction in benefits to prevent double recovery. There are several situations in which the Act allows for a reduction or adjustment in benefits outside of section 221 and section 354. These include, but are not limited to: (1) a reduction of the portion of incapacity attributable to subsequent nonwork injuries pursuant to 39–A M.R.S. § 201(5) (2007); (2) *an apportionment to apply the law in effect at the time of an injury occurring prior to 1993 pursuant to 39–A M.R.S. § 201(6) (2007);* and (3) a lien against third-party recoveries in the amount of benefits due pursuant to 39–A M.R.S. § 107 (2007). The Act also allows an employer to take a credit for a duplicate recovery in another state. *Lapointe [LaPointe] v. United Eng'rs & Constructors,* 680 A.2d 458, 461 (Me. 1996).

2008 ME 43, ¶ 14, 944 A.2d at 499–500 (emphasis added). The unavailability of a reduction in benefits due to a prior lump-sum settlement does not preclude a reduction in benefits when the employee has received the statutory maximum number of benefit payments for a portion of his incapacity.

### D. *Dunson v. South Portland Housing Authority*

[¶ 14] Miller asserts that, pursuant to section 354, any apportionment of the prior

injury may not be taken against the employee. That is, he contends that the most recent employer, Spinnaker, remains responsible for the entire benefit, and any decrease in the benefit that occurs by operation of section 201(6) must be shouldered by the most recent employer, pursuant to *Dunson*, 2003 ME 16, 814 A.2d 972. We disagree.

[¶ 15] In *Dunson*, we determined that the hearing officer erred when failing to apply the law in effect at the time of a 1991 injury, which required an adjustment for inflation to awards of total incapacity benefits, for the portion of the total benefit attributable to the 1991 injury. 2003 ME 16, ¶¶ 6, 9, 814 A.2d at 976, 977; *see also Johnson v. S.D. Warren, Div. of Scott Paper Co.*, 432 A.2d 431, 435–36, 437–38 (Me.1981) (holding former insurer is responsible to pay its share of the benefit to the most recent employer/insurer calculated pursuant to the average weekly wage in effect at the time of the earlier injury, and the most recent employer/insurer must make up the difference).

[¶ 16] Also in *Dunson*, the most recent employer took the position that, because the former employer received the benefit of a lower average weekly wage, the most recent employer should get the benefit of the inflation adjustment to allow it "to pay a level of benefits that more accurately reflect[ed] its true proportion of liability." 2003 ME 16, ¶ 13, 814 A.2d at 978–79. We disagreed, and held that the most recent employer was required to pay the employee "total incapacity benefits ... calculated according to the applicable total incapacity statutes for each date of injury and, in turn [, was] entitled to reimbursement from the employers responsible for prior injuries, according to their respective obligations to pay under the law at the time of those injuries." *Id.* ¶ 16, 814 A.2d at 979. We further concluded that "[a]ny increase in benefits resulting from the application of the inflation adjustment must be paid to the employee." *Id.*

[¶ 17] In *Dunson*, the application of the law in effect at the time of the injuries pursuant to section 201(6) inured to the benefit of the employee. *Id.* On some occasions, as in this case, the application of the law will inure to the benefit of the employer. This is the likely outcome when the relevant provision places a limit on the duration of an award. Whether the portion of an award attributable to a prior injury remained viable after the expiration of a statutory time limit was not at issue in *Dunson* or *Johnson*. *See Dunson*, 2003 ME 16, ¶ 1, 814 A.2d at 974; *Johnson*, 432 A.2d at 434–35. Here, the application of the law in effect at the time of the 1992 injury results in the conclusion that Miller has received all benefits to which he is entitled for that injury. His workers' compensation benefit, calculated according to the applicable partial incapacity statutes for each date of injury, must reflect a reduction of 25%, attributable to the expired injury.

[¶ 18] In conclusion, neither *Cust*, nor the amendment to section 354 or general apportionment principles require that the 65% partial benefit be maintained without a reduction for the 1992 injury. The hearing officer did not err in reducing the benefit by 25%.

The entry is:

The decision of the Workers' Compensation Board hearing officer is affirmed.